## ROTCH, administrator of *Elam, against* MILES.

Where a
man deserted his wife
and children, leaving

THIS was an action of *assumpsit*, for the use and occupation of a house in *Boston*, belonging to *Elam*, the intestate, her keeping a boarding-house, without any other means of support, and did not return to them, or make any provision for them, and she continued in the business in which she was left, conducting it in a reasonable and proper manner, to obtain a support for herself and children ; it was held, that he was liable for her contracts made in the course of such business.

Where a man, absent from his family, had knowledge, that his wife was keeping a boarding-house, to support herself and children, and did not return to them, or make any provision for them, but suffered her to continue the business, and rent a house for that purpose, without expressing any dissent, or publishing any prohibition ; and she conducted in a reasonable and prudent manner, to support the family ; it was held, that he was liable on her contract to pay the rent of such house.

hired and occupied by Mrs. *Mary Miles,* while she was the lawful wife of the defendant. One count of the declaration stated, that on the 1st day of *July,* 1814, the defendant was justly indebted to said *Elam,* then in full life, in the sum of 2,161 dollars, 46 cents, for the use, occupation, and rent of a certain house, and the appurtenances thereof, owned by, and belonging to, said *Elam,* situate in *Boston ;* for that one *Mary Miles* then was, and for more than twenty years before had been, the lawful wife of the defendant ; and as such, and as the mother of several children of the defendant, was by him, more than fifteen years since, left to support herself, and to maintain and educate said children ; and in that situation, said *Mary,* for the purpose of supporting herself and her children, with the knowledge, consent, and permission of the defendant, and of said *Elam,* on the 1st of *July,* 1811, at *Boston,* entered into the use and occupation of said house, and continued therein nine months, at the stipulated rent of 253 dollars, 82 cents, for every term of three months ; and at the expiration of said nine months, said *Mary* entered, with like consent and permission of the defendant, and of said *Elam,* into the occupation of said house, for the period of twenty-one months, at the stipulated rent of 200 dollars, for every term of three months ; and said *Mary* remained so occupying, until the 13th of *January,* 1814 ; and the defendant, in consideration of the premises, and that his said wife, by occupying said house as a boarding-house, had supported and maintained herself and their said children, assumed, &c. The other counts were general.

The cause was tried at *New-Haven, August* term, 1818, before *Swift,* Ch. J. and *Brainard* and *Chapman,* Js.

It was admitted, that Mrs. *Miles,* then the defendant's wife, had occupied, from the 13th of *July,* 1811, to the time of *Elam's* death, on the 25th of *October,* 1813, the house mentioned in the declaration, at the rent of 800 dollars *per annum,* in that part of the time which elapsed during the late war, and at 1,000 dollars *per annum,* during the residue of the time, payable quarter-yearly ; that this rent was reasonable ; and that it had not been paid.

To evince that the defendant was liable to this demand, the plaintiff introduced testimony to prove, and claimed that he had proved, that in the year 1801, the defendant and his wife, and six children, between the ages of two and fifteen,

resided in a house in *Cornhill* in *Boston,* in front of which the defendant had kept a shoe-store, and that the residue then, and for some time before, had been occupied, by the defendant's family, and kept as a boarding-house, under the peculiar care and superintendence of his wife; that during the year 1801, the defendant became unable to pay his debts, left *Boston,* proceeded to *New-Haven,* and thence to *St. Croix* in the *West-Indies,* where he continued to reside until the year 1810, when he returned to *New-Haven,* having acquired, in the mean time, a handsome estate; and that during his absence, he had never furnished, nor offered, any support to his wife and family, nor written to her a single letter. The plaintiff also introduced testimony to shew, that in the year 1809, Mrs. *Miles* hired the house, for the rent of which this suit was brought; that her brother, *Dudley Walker,* was responsible for the rent, for one year, *viz.* from the 13th of *July,* 1809, to the 13th of *July,* 1810, and for that time only; and that, at the death of *Elam,* a large sum was due for rent in arrear, as stated in the declaration.

It was agreed by the parties, that shortly after the defendant's return to *New-Haven* in 1810, he wrote a letter to *Israel Munson* of *Boston,* requesting him to call on Mrs. *Miles,* and make to her certain propositions to live with the defendant; which *Munson* did accordingly; and that the propositions were by her rejected. It was agreed, that the whole of the rent demanded, accrued after the propositions so made; the first year of such rent commencing on the 13th of *July,* 1811.

The defendant introduced testimony to shew, that he left *Boston* entirely destitute of property, and went to *St. Croix;* that, as soon he was able, he remitted money for the payment of his debts; and that he remitted 1,500 dollars to his nephew, *John M'Crackan,* for the purpose of educating his youngest son, *James,* whom he wished to be placed under the care of some respectable clergyman, and afterwards educated at *Yale,* or *Middlebury* college; but that his mother, Mrs. *Miles,* would not consent to this arrangement, insisting that he should remain under her care. The defendant also introduced evidence to prove, that Mrs. *Miles* had repeatedly declared, that her husband did not possess her affections, and that she would never live with him again; that the house kept by her was an expensive one, of the value of 25,000

*New-Haven,*
November,
1818.

Rotch
*v.*
Miles.

dollars ; that she continued to occupy it until 1815 ; that on the 24th of *July*, 1811, he gave public notice, that he would not hold himself responsible for debts contracted by her, by an advertisement, which he procured to be inserted in the *Boston Centinel*, a paper of general circulation ; and that the separation of him and his wife was publickly and generally known. The defendant also proved, that in *January*, 1814, he obtained a divorce from her, for wilful desertion and total neglect of duty ; and it appeared, that she made no defence to the petition.

From the evidence adduced, and the facts admitted, the defendant contended, that the credit for the rent had been given exclusively to Mrs. *Miles* and her brother, without any expectation of resorting to him ; that she had deserted and eloped from her husband ; and that, of course, the defendant was not chargeable with any debts, contracted by her, even for necessaries : and further, that the hiring of so expensive an establishment, with a view of keeping an elegant and fashionable boarding-house, was not a necessary, within the intent and meaning of the law.

It was not claimed by the plaintiff, that the defendant was liable for the rent, on the ground of any express contract, otherwise than as he became liable, by the contract of his wife.

The plaintiff, on his part, claimed, that it was not proved by the defendant, that Mrs. *Miles* rejected the offer of 1,500 dollars, for the support of their son *James ;* but that she insisted, that it should be kept for her to draw upon, for his support, with a respectable clergyman near *Boston*, where he then was, or that it should be sent to her, for that purpose, as he was a cripple, and she did not intend he should be taken from her immediate care, while his father was in a foreign country. The plaintiff also claimed, that he had proved by many witnesses, that the house kept by Mrs. *Miles* was suitable and proper, and in no respect too expensive for a good and convenient boarding-house, for the support of herself and children, in a decent and prudent manner ; that the management of it was prudent ; and that she indulged in no extravagance, or any kind of unnecessary expenditures, but that, with the most unwearied industry, and the strictest œconomy, she had maintained herself and children, and had given them a suitable education, during the period

*New-Haven,*
November,
1818.

Rotch
*v.*
Miles.

from 1801 to 1815. He also claimed, that it appeared from the advertisement inserted in the *Boston Centinel,* and the manner of its insertion, that it was not intended, by the defendant, as a public notice of his refusal to permit his wife to gain credit on his account, and that, at any rate, it never came to the knowledge of *Elam ;* and that it was, also, apparent, from the manner in which the proposal was made through *Israel Munson,* that it was insidious, and was made with intent to draw a refusal from her, to enable him to obtain the divorce, which was pursued precisely three years afterwards, and granted on an *ex parte* hearing.

It was admitted, that the defendant, in 1801, left his wife keeping a boarding-house in *Boston,* with six children to support, and had never seen her since, or offered to her or them any support, except in the instance, and in the manner, before stated. There was no proof as to the rent of the house in which she resided, when he left her. Nor was there any proof, that *Elam* had any acquaintance with the defendant ; or that he knew, or was ignorant, that Mrs. *Miles* was a married woman.

From the evidence adduced, and the facts admitted, the plaintiff contended, that it might fairly be presumed, that the defendant well knew the manner in which his wife was living in *Boston,* and supporting herself and children ; that as he had left her and them, without making any provision for their support, he must be presumed to have made her his agent for that purpose, the obligation of support being perpetual ; and that he might also be presumed to know, that she was pursuing the business, in which he left her, *viz.* that of keeping a boarding-house—and having such knowledge, and not prohibiting her, he is to be considered as authorizing and approving of her conduct. On these grounds the plaintiff claimed, that he was entitled to recover. He also insisted, that the defendant had utterly failed to prove any desertion or elopement, on the part of Mrs. *Miles ;* but that it was apparent he might, at any time, have taken her, and her children, into his protection, for her and their support, as he was bound to do ; and that, in truth, the defendant deserted his wife and family.

The court charged the jury, that if they should find, that the defendant deserted his wife and children, and left her keeping a boarding-house, without any means for their

*New-Haven,*
November,
1818.

Rotch
*v.*
Miles.

support ; and that he never returned to them, or made, or offered to make, any provision for their support ; that the wife continued in the business in which she was left by the defendant, and that she conducted and managed it, in a reasonable and proper manner, to obtain the means of supporting herself and children : or, if they should find, that the defendant had knowledge that his wife was keeping a boarding-house, to acquire a support for herself and children ; and that he did not return to his family, or make, or offer to make any provision for their maintenance ; and that he suffered his wife to continue to keep a boarding-house, and to hire the house of *Elam* for that purpose, without expressing any dissent, or publishing any prohibition ; and that the defendant's wife conducted in a reasonable and prudent manner, in keeping such boarding-house, to obtain the means of supporting her family—then their verdict must be for the plaintiff. But if they should not find these facts ; or if they should find that the wife of the defendant eloped from him ; then their verdict must be in his favour.

The jury gave a verdict for the plaintiff ; and the defendant moved for a new trial, on the ground of a misdirection. The court reserved the motion.

*N. Smith* and *Bristol,* in support of the motion, contended, 1. That the charge was incorrect, in regard to the first alternative, in allowing the wife to carry on the business of keeping an elegant and expensive boarding-house, during the husband's desertion, and in making him responsible for her contracts in that business. The desertion of the husband, without providing for the support of his wife, renders him liable only for *necessaries.* 1 *Black. Comm.* 442. 1 *Bac. Abr.* 488. (*Wils.* edit.) *Reeve's Dom. Rel.* 81.

2. That the charge was also incorrect, in regard to the second alternative, as the facts therein specified are, at most, but *evidence* of the husband's *assent,* and do not *per se* render him liable. The court ought, therefore, to have submitted these facts to the jury, and left it for them to say, by their verdict, whether an assent were proved. *Manby* v. *Scot,* 1 *Bac. Abr.* 489, 490. (*Wils.* edit.) S. C. 1 *Lev.* 4. S. C. cited *Bul. N. P.* 136. 1 *Bos. & Pull,* 227. n. (1.) by *Day.* 1 *Selw. N. P.* 288. (*Albany* edit.) *Etherington* v. *Parrot,* 1 *Salk.* 118. S. C. 2 *Ld. Ray.* 1006.

3. That a new trial ought to be granted, on the ground of the entire omission of the court to submit to the jury the defendant's claim, that the credit for the rent of the house occupied by Mrs. *Miles* was given exclusively to her and her brother. If this point had been found in the defendant's favour, it would have entitled him to a verdict. *Melcalfe* v. *Shaw*, 3 *Campb.* 22.

4. That from the facts admitted, Mrs. *Miles* was in a state of wilful separation from her husband; and, therefore, he was not liable.

*Daggett* and *Sherman*, contra, contended, 1. That the duty of a husband and father to support his wife and children, is of perpetual obligation, and remains upon him, notwithstanding his desertion of his family.

2. That this duty is paramount to any assent of his; and is not founded on assent; but results from the marital and paternal relation. He is liable in cases, which, from their nature, repel a presumption of assent; as where he turns his wife out of doors, or by his ill treatment, renders her situation in his house unsafe. *Reeve's Dom. Rel.* 80. 81, 2. *Hodges* v. *Hodges*, 1 *Esp.* 441. *Harris* v. *Morris*, 4 *Esp.* 41. *Thompson* v. *Hervey*, 4 *Burr.* 2177. *Stone* v. *Carr*, 3 *Esp.* 1.

3. That if the jury found the facts submitted to them, they might well find, that the defendant constituted his wife his *agent* in those transactions: he is, therefore, bound by her contracts.

4. That the court submitted to the jury the question, whether Mrs. *Miles* had eloped from her husband; and they found that she had not. Still from the facts admitted, or claimed to have been proved, by the defendant, were that question now open, it would be clear that she did not elope, but he deserted her; and that his offer to live with her was insidious, calculated only for ulterior proceedings to obtain a divorce.

5. That, though the contract for rent was not made with him personally, but with her; yet if, from the facts in the case, it was a contract binding on him, he must discharge it, unless it be shewn that *Elam* agreed not to look to the defendant. Now, no testimony was offered to induce a belief of such fact. The only testimony was, that *Elam* contracted with Mrs. *Miles*; that her brother secured one year's rent; and that she lived

separate from her husband; there being no proof, that *New-Haven,*
November,
1818.

Rotch
*v.*
Miles.
*Elam* had any acquaintance with the defendant, or knew, or
was ignorant, that she was a married woman.

SWIFT, Ch. J.    In this case, the court decided, that where
a husband deserts his wife and children, and leaves her
keeping a boarding-house, without furnishing the means for
her support, and does not return, or make any provision for
them, and the wife continues the business in which her hus-
band left her, conducting in a reasonable and proper manner,
to obtain a support for herself and children, the husband is
liable for her contracts made in the course of such business ;
and the question is, whether this decision was correct.    The
defendant rests his defence on the ground, that the wife can
charge her husband for necessaries only, without his consent ;
that this contract was not for necessaries ; and that the facts
submitted to, and found by, the jury, do not render him
liable.

It will be agreed, that when the husband turns his wife out
of doors, or drives her from his house by ill treatment, or
abandons her without support, or refuses to furnish her a
support, she can charge him with contracts for necessaries,
without his consent ; and that she has this power in no other
cases.    But the question in this case, depends upon entirely
different principles ; and if we do not find a case precisely
similar in point of fact, yet if we can find acknowledged
principles, which will support the decision, it is sufficient ;
for though we cannot make law, yet where we find known
principles, it is always proper to extend them to analogous
cases.

The husband is bound by all the contracts of his wife, made
with his consent, express, or implied.    Where he permits
her to engage in, and carry on, any branch of business, the
law will presume his assent to all the contracts she makes in
the course of it.    The husband is liable for all the goods
that come to the use of his family, with his knowledge,
though they are not necessaries.    When he goes from home,
leaving his family and business in the care of his wife, he
constitutes her his agent, to manage the concerns entrusted
to her, and to provide for his family ; and he is liable for
the contracts she makes in the course of such business.    It
would be strange to say, that as soon as a husband has left

his house, his wife is disarmed of all power of agency ; that she cannot contract debts in the proper management of his affairs ; and can only charge him for the necessaries of life. To reduce her to this degraded condition, he must do some act to abridge her power, and make it known to the world, by a public prohibition. But if he will not take this measure, it is to be presumed, that he empowers his wife to act for him, and take care of his business during his absence. It is not pretended, that she may embark in new enterprizes, and plunge him into debt, to his ruin : she must conduct in a prudent manner, and make no contracts but what are necessary, to perform the trust reposed in her. If she is left in the possession of a farm, she may employ labourers to cultivate it, and preserve the crops ; but she may not buy new farms. If he should be sued, she might employ counsel, where it might be necessary for his defence ; and dreary would the situation of a family very often be, if the wife is not allowed to exercise this power. Suppose a man of large property should unexpectedly be detained from home till the lease of the house where he left them, should expire ; will it be pretended, that the family must be turned into the street, because the wife has no power to take another house ?

When the defendant, while he resided with his family, permitted his wife to keep a boarding-house, he rendered himself liable to fulfil her contracts for that purpose. When he left her, without breaking up his family, without countermanding her authority, keeping a boarding-house, to acquire the means of supporting herself and family, he assented that she should pursue the same business, and do all acts necessary to accomplish that object. This power did not cease by lapse of time : it continued till revoked, or the marriage was dissolved. He might have broken up his family, and have published to the world a prohibition to trust her ; he might have placed her on the footing that she could charge him only for necessaries, and have left his family to suffer the consequences. But he did not choose to do this ; he was willing that she should keep the family together, and, if in her power, provide for them a livelihood, by the business she was pursuing. This was placing her and his family in a much better situation than, by a revocation of all power to bind him, to have thrown them on the town. This is irresistible evidence, that he assented the wife should continue

New-Haven,
November,
1818.

Rotch
▲
Miles.

the employment in which he left her ; and the clearest prin-
ciples of justice require, that he should be bound by her con-
tracts.   Leaving his family under such circumstances, im-
posed on him the same obligations as if he had continued to
reside with them.   They constituted his family ; he was
bound to support them ; and every article received to their
use, was received to his use.   To take a house on rent, was
necessary in order to pursue the business in which she was
left : it came within the scope of the authority delegated to
her ; and he ought to be bound by the contract.

The superior court, in this case, also decided, that a hus-
band, who has knowledge that his wife is keeping a boarding-
house, to support herself and children, and does not return
to his family, and make any provision for their support, but
suffers her to continue the business, and rent a house for that
purpose, without expressing any dissent, or publishing any
prohibition ; and the wife conducts in a reasonable and pru-
dent manner, to support the family ;—is liable on her con-
tract, to pay the rent of such house.   This decision, I ap-
prehend, is warranted by analogous cases.

When a man permits those over whom he has a lawful con-
troul, who are under his government, and who are not
legally capable of contracting, to carry on business, without
expressing any dissent, publishing any prohibition, or doing
any act to restrain them, the law will presume his assent,
and he will be liable for their undertakings.   If a father,
with knowledge that a minor son has set himself up in busi-
ness, permits him to make contracts, without restraint or
prohibition, the law will imply his assent to them : for the
son, being under age, cannot make a binding contract ; it is
the duty of the father to restrain him, if he does not intend to
be liable for his engagements : if he does not restrain him ;
if he does not, by some proper act make known to the world
the disability of the son, so as to put people on their guard ;
then it will be presumed, that he assents to his contracts.
But if the minor son should make contracts without the
knowledge of the father, he will not be liable, unless he makes
himself so, by some subsequent act.

If a man knows, that another is transacting business in
his name, as a partner, or is making use of his name, in exe-
cuting notes or other contracts, and does not express his dis-
sent, or prohibit it, or take proper measures to prevent the

imposition, the law will presume from his silence, that he has assented to it ; and he will be bound by the acts done in his name, though without any authority from him ; and this on the maxim, that he who does not prohibit an act when he has the power to do it, assents to, and commands it : *nam qui non prohibet, cum prohibere possit, jubet.*

On the same principle, if a man will permit his wife and children to live together in a family, to manage business and to make contracts without interference or restraint, he assents to it, and ought to be bound by their engagements. When the defendant knew the situation of his family, it was his duty to have joined them, asserted his marital rights, and provided for the maintenance and education of his children. If he did not choose to do this, he had the power to prohibit any person from giving her any credit on his account ; and the consequence would have been, that he could have been chargeable for no debts for his family, excepting necessaries ; and for these he would most clearly have been chargeable. But he adopts neither of these measures. What is the language of his conduct? Wishing to avoid being charged with the necessary expense of providing for his family, as he would have been, had he advertised his wife ; and trusting that she would continue to maintain them, if he did not interpose ; he made his election to permit her to pursue the employment in which he knew she was engaged. He well knew, that she kept up a family establishment ; that she was engaged in business, and contracted debts, for that purpose ; and he never countermanded her authority, or expressed any dissent to her proceedings. Silence, under such circumstances, is equivalent to an express consent. It is true, he did not intend to incur a liability for her contracts : nor does the father who permits the minor son to trade, or the man who permits another to use his name : but the law creates the liability, and compels a man to do, without his consent, what he ought, in justice, to do voluntarily. He might have calculated upon the probability, that the expense would be less to permit her to pursue her business, than to interfere, and put an end to it. But let his views be what they would, the consequence of his conduct is the same respecting his liability. And now, since his wife, by uncommon industry and exertion, has, for a long time, nearly maintained the family, and left only a balance for house-rent, it is too late for him to resort

*New-Haven,*
November,
1818.

Rotch
*v.*
Miles.

to the pretence, that this does not come within the legal defi-nition of necessaries, and therefore, he will not pay it. He should have taken this ground at an earlier period ; and then nobody would have been deceived by his conduct.

It may also be said, that where a man of affluence permits his wife and children to keep up a family establishment, without interposing on his part, it is still to be considered as his family, notwithstanding his absence ; and as he is bound to provide for them, his wife must necessarily be his agent for that purpose, if no other is appointed ; and that every article received to the use of the family, is received to his use, as much as if he were living with them. Where there is an agreement for a separation, and that known, or for a separate maintenance, this would make a difference ; but here there is no pretence of such an agreement.

It is so reasonable and just, that a man should pay the expense of supporting his own family, and not cheat others out of it, that one would hardly imagine any objection would be made to the doctrine I am contending for. But it is said, that this would subject the husband to great hardship, and would enable the wife to contract debts, which would involve him in ruin. But this is an unfounded objection. Experi-ence shews, that it is as safe to trust a wife with a power to manage the concerns of her husband in his absence, as any other person ; and if the husband dare not trust her, or does not mean to trust her, it is easy for him to adopt measures, which will put it out of her power to do him any harm. At any rate, the possibility that the power may be abused, is no reason why it should not be implied, or given.

It is also contended, that the court should have left it to the jury as a question of fact, whether the defendant assented to the contract of the wife. But the question before the court, was, whether the defendant was liable in law for the demand, admitting the facts to be true. The court submitted to the jury all the facts litigated by the parties. Whether these made the defendant liable—or amounted to an assent, so that he became liable—was a mere question of law, to be decided by the court, and could, with no propriety, have been submitted to the jury. It is true, the court might have told the jury, if they found the facts submitted to them to be true, they were warranted to presume an assent, which would make the defendant liable. But there could have been no manner of

*New-Haven,*
*November,*
*1818.*

Rotch
*v.*
Miles.

difference in effect, between such a charge and the present ; for the question of law is as properly, and as fairly, raised, in one mode, as in the other.

It is said, when the defendant proposed to his wife to live with her, and she refused, this amounted to a voluntary separation. But this was a secret act, designed to be concealed from the world ; and nothing can be more unjust than to say, that a husband, by such a secret act, can discharge himself from his liability to fulfil the contracts of his wife, when he holds her out to the world as his wife, and permits her to act in that character.

But here was no agreement for a separation ; and if there had been one, as it was never made known, it could have no effect. If the defendant was desirous of placing his wife on such a footing that he should not be liable for her contracts, he might easily have accomplished it ; but it can never be done by private agreement.

It is said, that after the defendant returned from the *West-Indies,* and offered to live with his wife, her refusal, and her declaration that he did not possess her affections, was a desertion on her part, and an elopement. But it was never before heard, that the mere declaration of a wife to her husband, that she did not love him, and would not live with him, was an elopement. He has the controul of her person, and may insist on his marital rights. Something more than mere *words,* on her part, is necessary to constitute an elopement.

This fact was, however, fairly put to the jury, on the evidence ; and they have negated it.

It is further said, that the court ought to have submitted to the jury the fact, whether the contract was not made with the wife only, with an understanding not to look to the husband. But the facts conceded, exclude such presumptions. No such agreement was made. It does not appear, that the intestate, with whom the contract was made, knew that she had a husband. The only question, then, that could arise, was, whether the contract was made under such circumstances as to bind the husband.

EDMOND, BRAINARD and CHAPMAN, Js. were of the same opinion.

HOSMER, J. The charge to the jury, in my opinion, was altogether incorrect. It embraced principles unknown to the

*New-Haven,*
November,
1818.

Rotch
*v.*
Miles.

common law, and departed from those which uniformly have been established. A wife, deserted by her husband, and without the means of supporting herself and children, is invested with a legal right to take up *necessaries*, on his credit, for the maintenance of herself and family. *Boulton* v. *Prentice*, 1 *Selw. N. P.* 293. S. C. 2 *Stra.* 1214. S. C. *Bul. N. P.* 135. *Lungworthy* v. *Hockmore*, 1 *Ld. Raym.* 444. *Etherington* v. *Parrot*, 2 *Ld. Raym.* 1006. S. C. 1 *Salk.* 118. S. C. *Holt*, 102. *Thompson* v. *Hervey*, 4 *Burr.* 2177. *Harris* v. *Morris*, 4 *Esp. Rep.* 41. *Rawlins* v. *Vandyke*, 3 *Esp. Rep.* 250. *M'Cutchen* v. *M'Gahay*, 11 *Johns. Rep.* 281. In the term *necessaries* are comprised, food, drink, clothing, washing, physic, instruction, and a competent place of residence. This is the utmost limit of the common law. *Whittingham* v. *Hill, Cro. Jac.* 494. 1 *Black. Comm.* 466. 1 *Bac. Abr.* 488.

The principle implied in the charge to the jury, authorizes the deserted wife to commence a hazardous business on the credit of her husband ; and at great expense and risk, *to take up necessaries for a very numerous family,* that out of the profits of her employments she may maintain herself, and her children. The qualifications with which the principle was accompanied, only render it more exceptionable. The interest of the husband and wife equally demand, that she should not be restrained to the employment in which she was left ; but, if she is permitted to undertake business on his credit, that she may resort to that which is least hazardous, and which, at the least expense, promises the most competent support. The second qualification, that the husband's responsibility depends on the *reasonable and proper manner,* in which she conducts herself, has no foundation in principle, and would often effectually defeat the obtaining of any credit. The rights of the vendor cannot depend for their validity, on the *subsequent act of the purchaser.* If they did, no prudent person would run the hazard of *trusting* to this contingency.

To the charge of the court, there exist many insurmountable objections.

It is a *novelty,* and introductory of a principle, in subversion of the common law, long, and universally, and indisputably, settled. This observation is all which the case requires. The overturning of principles, used and approved from the

most antient period, and the removing of established landmarks, is one of the most forcible objections which can be urged. Here I should pause, were I not induced to proceed further, out of mere comity to those from whom I differ.

The principle is *not necessary* to accomplish the object in view. Generally speaking, that credit, which is sufficient for the transaction of business, especially on a large scale, is competent to the acquisition of the direct means of living.

The principle is *inadequate* to the intended purpose. There is no reasonable certainty, that success will attend the undertaking.

It is a principle highly *dangerous.* The failure of the wife, which not improbably will result, in the greater number of instances, will be destructive of the husband's credit, and ruin both him and his family.

It is alarming from its *unlimited extent.* In illustration of this assertion, I will merely recur to the case before the Court : a wife, accustomed, when living with her husband, to entertain a few boarders in the rear of his shoe-store, is said to be authorized, by his desertion of her, to hire a hotel, at the annual rent of 1000 dollars. By necessary consequence, she is empowered to employ a competent number of servants ; to purchase fashionable furniture, for a large mansion ; and to supply her table with costly viands, for the accommodation of numerous guests. It is established law, that she cannot borrow money, on the husband's credit, although she apply it to the purchase of necessaries. *Earle* v. *Peale,* 1 *Salk.* 387. *Stephenson* v. *Hardy,* 3 *Wils.* 388, 9. But, on the novel doctrine of this case, she may contract debts for articles requisite to carry on her business to any amount ! A few hundred dollars would be entirely adequate to the annual support of herself and children. Notwithstanding this, it seems that she may onerate her husband with a debt for thousands of dollars, not for the direct maintenance of herself and six children, but to sustain a family ten times as numerous ; *that out of the expected profits* she may acquire a competent livelihood ! The wisdom of the common law strikingly appears, when it is contrasted with a principle pregnant with such mischievous consequences. The common law allows a direct support, while it shields the husband from unreasonable peril and inconvenience. It is safe and salutary, without being penal.

*New-Haven,*
November,
1818.

Rotch
*v.*
Miles.

The principle adopted by the court, if admissible under any possible circumstances, (which I am clear it is not) could alone be authorized as a dernier resort, after the failure of every attempt to procure necessaries in the ordinary manner. For aught that appears, Mrs. *Miles* might have supported herself and family, without a recurrence to the dangerous expedient of an expensive boarding-house.

With respect to that part of the court's charge, founded on the knowledge of the defendant, that his wife was keeping a boarding-house, without his express prohibition, I am of opinion it was manifestly incorrect. No consequence can result against the husband from the *knowledge,* which would not equally arise from his *ignorance,* of his wife's employment. His desertion imposed on her the necessity of acquiring a support; and for every legitimate consequence he must be responsible. For consequences not of this description, he can be under no responsibility. The distinction, which the court have thought proper to make, between the knowledge and ignorance of the husband concerning his wife's conduct, is a novelty to which the common law affords no sanction. Besides, if it were of any avail, it would alone be evidence to the jury of *assent* on his part, and to them should have been submitted as a fact. In my judgment, however, it is a circumstance, which can be of no possible weight before any tribunal. From the omission of his duty, by the husband, who has deserted his wife, no inference can arise, that he has invested her with any actual authority.

To the charge of the court there exist other objections. It was contended by the defendant, that before the contract of hiring for the plaintiff's house, he had offered to live with his wife, and that she had refused his proposal. The proof relative to this proposition, should have been submitted to the jury. Taking it for granted, as I am bound to do, that it was fairly made and flatly refused, what was the legal consequence? The tables were turned; the wife from that moment became the *deserter,* and all the rights of the husband revived. *Child & al.* v. *Hardman,* 2 *Stra.* 875. *Tod* v. *Stokes,* 12 *Mod.* 244. *M'Cutchen* v. *M'Gahay,* 11 *Johns. Rep.* 281. *M'Gahay* v. *Williams,* 12 *Johns. Rep.* 293. Nor can the plaintiff object, that he was ignorant of the wife's desertion. " All persons supplying the necessities of a married woman separate from her husband, are bound to make

enquiries as to the cause and circumstances of the separation, or *they give credit at their peril.*"    *M'Cutchen* v. *M'Gahay,* 11 *Johns. Rep.* 282.    It is no sufficient answer, that the jury were informed, that if the wife had eloped, the defendant was entitled to their verdict.    Whether she was in a state of elopement depended on *a point of law.*    They should have been told, that if the defendant had offered to live with his wife, and she had refused, this constituted a desertion on her part.

It was insisted, at the trial, that in point of fact, credit was given to Mrs. *Miles exclusively,* for the hire of the plaintiff's house.    If this were so, the defendant is not responsible.    *Metcalfe* v. *Shaw,* 3 *Campb.* 22.    This question should have been submitted to the jury.

On the whole, I am of opinion, that the charge to the jury was incorrect, and that a new trial ought to be granted.

TRUMBULL, SMITH, and PETERS, Js. were of the same opinion.

GOULD, J. declined giving any judicial opinion, having been consulted, while he was at the bar, upon another claim against the defendant, resting upon a similar state of facts, and involving the same principles.    His professional advice, in that case, it is understood, was *against* the claim of his client.

New trial not to be granted.