## CHAMBERLAIN *v.* DAVIS.

In an action by the husband to recover for the services of his wife, the defence set up was that the plaintiff's wife was supported in the defendant's family, where she rendered the services, on a contract that nothing was to be paid for them beyond her support, and it appeared that the wife made such a contract —*Held*, that the fact of the husband's living separate from the wife, without making provision for her support, might be shown as a circumstance tending, with other evidence, to prove his assent to the contract:

That a general settlement of accounts between the parties, made before the services sued for were rendered, in which nothing was allowed or demanded for the wife's services, performed before the settlement, was competent evidence tending to prove that the plaintiff knew his wife worked on such a contract, and assented to it :

Chamberlain v. Davis.

That if the wife, up to the time of the settlement, worked for her support only, and continued afterwards to work in the same way, without a new contract, the jury might presume that she continued to work on the terms of the old contract.

The statements of the wife, made in the execution of her agency for the husband, are evidence against him, as in the case of other agents ; but her statements made afterwards respecting the subject of the agency, are not admissible as against him.

ASSUMPSIT, to recover for the labor of the plaintiff's wife, Eliza Ann Chamberlain, from May 4, 1847, to April 12, 1853.

The defence was, 1. That the services were rendered under an agreement that nothing should be paid for them beyond her support; and, 2. That she was entitled to her own earnings.

In support of the second ground of defence, there was evidence to show a desertion on the 4th of May, 1847, or at a later period, without any provision for a maintenance, and evidence to show that the plaintiff was occasionally intoxicated; but when the evidence was all in, it wholly failed to prove that he was an habitual drunkard; and the cause, as to the second ground, finally went to the jury upon the question of desertion, &c. And the jury were instructed that unless the first ground of defence was made out, their verdict must be for the plaintiff; because, if a desertion on the 4th of May, 1847, were fully proved, the plaintiff would still be entitled to the wages of his wife for the first three months.

The plaintiff's counsel excepted.

In the course of the trial several exceptions were taken relating to the defence of desertion, which, in the view of the case taken by the court, are not necessary to be stated.

The plaintiff's counsel said they offered Cyrus K. Sanborn, Esq., to contradict Thomas Mitchell in respect to the plaintiff's drinking habits, and as to the reasons why Mrs. Chamberlain would not live with her husband. Mitchell had testified to instances of intoxication, but had not stated that Mrs. C. would not live with the plaintiff, nor that he knew why she did not live with him. He had testified to facts from which desertion might be inferred. It appeared that Mitchell, who is a brother-in-law,

carried the defendant, who is a brother of Mrs. Chamberlain, to the office of Hobbs & Sanborn, counsellors at law, and when they arrived at the office the day was very warm and the defendant very infirm. Mitchell went into the office, and told Mr. Hobbs that Davis wished him to go out to the wagon; but he objected to standing in the sun, and inquired of Mitchell if he did not know all about it that Davis did, and he answered that he did, and thereupon made the statements which the plaintiff now proposes to prove, and upon them H. & S. gave advice in respect to Mrs. Chamberlain's rights, and whether she could obtain a divorce.

The court ruled that the communications were privileged.

Certain rulings in relation to the admissibility of evidence upon the first ground of defence were excepted to.

It appeared on the part of the defendant that Mrs. Chamberlain had lived with him, with the exception of a few months, from the time of her marriage with the plaintiff, in 1833, and that from 1844 to May 4, 1847, her labors were rather more severe than afterwards. Her husband had never made any provision for her, and she had no means of support except her own labor. The plaintiff was absent most of the time, but made his home at the defendant's until the spring of 1847, and until the summer of 1849 he was occasionally there. He carried on the defendant's farm in 1846, and was there a considerable portion of the time in the winter of 1846 and the spring of 1847, until their settlement on the 4th of May. About a week before that settlement the defendant told the plaintiff he had not slept any the night before in consequence of hearing him scold Eliza Ann, the plaintiff's wife. If it was on account of the land, he might have his land by paying him or securing what he owed him, and he would settle and allow for every thing he ever had; but if it was about Eliza Ann's stopping there, she might stay as long as she chose, but as for ever paying him one cent for what she did, he never would. The plaintiff replied that he should like to settle. Mrs. Mitchell testified that she was present at the settlement, and that the parties went into all the particulars that had ever

taken place between them, as they said, and there was not any thing claimed or allowed for her work. Within a day or two after this the plaintiff went to Durham to work, and his wife had her brother's horse and wagon, and carried him as far as Rochester.

It had been shown on the part of the plaintiff that about 1847 and afterwards, he owned the equity of a farm about two miles from the defendant's, and that he lived there by himself for some months while he was engaged in logging, and until a family moved into the house, and then he boarded with them. But the evidence was somewhat conflicting as to the value and condition of the farm and buildings. Under these circumstances the court permitted Mrs. Mitchell to testify to different conversations between Mrs. Chamberlain and her brother, in 1847, and before that time, and even as early as 1839, that she should remain at his house and work for her living, and nothing more, to which she assented. But the jury were instructed that the plaintiff could not be affected by any such understanding, unless they believed, from the facts proved, that it came to his knowledge, and he assented to it.

The ruling was excepted to on the ground that there was no evidence in the case from which it would be competent for the jury to find that it did come to the plaintiff's knowledge.

Mitchell was afterwards called to prove the settlement of May 4th, and the plaintiff's counsel then objected that the testimony should not be received, inasmuch as the plaintiff did not in this suit make any claim for the services of his wife before that time ; but the objection was overruled. It appeared from the testimony of this witness, and from papers laid before the jury, that the plaintiff at that settlement gave his note to the defendant for $225, which was the sum found due, and also gave the defendant a receipt " in full of all accounts," and the defendant reconveyed the land to which he had alluded the week before, and upon which the plaintiff afterwards lived, as before stated.

The jury having returned a verdict for the defendant, the

plaintiff moves that the same be set aside because of said rulings.

*Wheeler,* for the plaintiff.

The evidence relating to the second ground of defence was all improperly admitted. The right of the wife to hold property, &c., as declared by the statute, is a personal privilege, which she may avail herself of or not, as she pleases ; and if, after suit commenced by the husband for her wages, and with her knowledge, she neglect to make her claim under the statute, her right will be considered as waived.

The defendant cannot make that defence, unless the wife has made a claim in her own right upon him. Compiled Statutes, chapter 158, sec. 1. It is analogous to infancy. *Conn* v. *Coburn,* 7 N. H. 372.

Such evidence should not be received under the general issue. It is a special statute provision in avoidance of the contract, like the statute of limitations, and should be pleaded specially, or the general issue with notice. Compiled Statutes, chap. 158, sec. 1.

The question of desertion, from the course of the trial, became an important and material point, and one in issue, being one of the grounds of the defence relied upon ; one of the points submitted to the jury, and one upon which they passed. It was, moreover, important as bearing upon the question of the alleged agreement upon which the defendant prevailed. No express agreement was proved or pretended, but it was left to the jury to determine, from the whole evidence and the circumstances which it disclosed.

The case finds that Mitchell had testified to instances of intoxication, to facts from which desertion might be inferred, and to other facts, which, if competent for any purpose, had a more direct bearing upon the question of the alleged agreement.

The testimony of Cyrus K. Sanborn, offered by the plaintiff as to the account that Mitchell had given of plaintiff's drinking habits, and of the reasons why Mrs. Chamberlain would not live

with her husband, would then have contradicted Mitchell in a material point, and have shown that Mitchell had told a different story from the one he told upon the stand.

The testimony of Sanborn, then, was material, and should have been received, unless, as the court ruled, they were privileged communications. Upon this point the ruling of the court was incorrect, because the relation of attorney and client did not subsist at the time they were made, nor did they have reference to the subject matter of this suit. It does not appear that Mitchell had authority to take counsel; it was voluntary.

The communications had reference to Mrs. Chamberlain's rights, not the defendant's, and whether *she* could obtain a divorce. Mitchell, too, was called by the defendant, and that was a waiver.

We contend that the exceptions numbered 13, 14, 15 and 16, are well founded, and the ruling of the court upon these several points was erroneous. Compiled Statutes, chap. 158, sec. 1; chap. 157, sec. 3; 1 N. H. 298; 6 N. H. 87; 8 N. H. 162; 12 N. H. 80; 13 N. H. 222.

The conversation between Mrs. Chamberlain and the defendant was properly admitted. It does not appear that any of these conversations took place after the settlement of 1847, and the plaintiff claims nothing before that time.

There is no evidence in the case to show that these conversations came to the knowledge of the plaintiff, much less that he had assented to it.

The plaintiff made no claim in this action to services prior to May 4, 1847. The evidence, therefore, in relation to any settlement prior to that time was wholly incompetent and irrelevant.

*Christie & Kingman*, for the defendant.

The second ground of defence was founded on the 1st and 3d sections of chap. 158 of the Compiled Statutes; but as the court ruled that unless the first ground of defence was made out, their verdict must be for the plaintiff, this ground, and all the evidence, and all the exceptions connected with it, became immaterial—the verdict being confined to the first point of defence.

The ruling of the court as to the evidence of Mr. Sanborn was entirely correct. The communications were made to the counsel in their professional capacity, in the transaction of business for which they were employed to advise this defendant, and about which the witness and his partner gave advice. This doctrine is too well established in the following authorities to need a further discussion. 1 Greenl. Ev. 239, *et seq.* ; *Bean* v. *Quimby*, 5 N. H. 94 ; 1 Phil. Ev. 140, and notes 270 to 281.

The agreement between the defendant and the plaintiff's wife, testified to by Mrs. Mitchell, would certainly be binding on the defendant, if he assented to it. The objection is that there was no evidence from which the jury could find that it came to his knowledge. The case finds that there was evidence to prove that the plaintiff's wife, ever since her marriage in 1833, more than twenty years, had lived with the defendant, with the exception of only a few months ; that the plaintiff had never made any provision for her, and she had no means of support except her own labor and the defendant's charity ; that the plaintiff was often at the defendant's house, carried on his farm in 1846, and in fact made his home there, when in that part of the country, until 1847 ; that in the spring of 1847 he settled with defendant all matters between them, and gave a receipt in full of all accounts ; also giving his note to the defendant for a large balance, and that in that settlement nothing was claimed or allowed for the labor of his wife.

We think that the inference from this evidence is irresistible, not simply that he knew the terms and conditions on which his wife was supported by her brother, but that he assented to them.

He proves he had property ; he was liable, therefore, for her support. In his absence she had the power to bind him by her contracts for her support ; and we insist that he would be bound, under such circumstances, by any contract she might make for supporting herself by her own labor, until he relieved her from the necessity, by providing such support himself. But we are not required to go so far to sustain this verdict. *Rumney* v. *Keyes*, 7 N. H. 571.

The evidence of Mr. Mitchell was put in to corroborate and strengthen the evidence of Mrs. Mitchell, and was admissible on the same ground. The settlement of May 4, 1847, was material, as showing the knowledge and assent of the plaintiff to the contract or agreement made by his wife with the defendant for her support. It was the act of the plaintiff in relation to the subject matter of this suit. On what principle could it be rejected?

But the same evidence had already been laid before the jury by Mrs. Mitchell, without objections; and if the court had sustained the objection, and refused to admit Mr. Mitchell at this stage of the case, it could not have changed the verdict, as Mrs. Mitchell was uncontradicted and unimpeached.

PERLEY, C. J.    The court instructed the jury that unless the first ground of defence was made out, the plaintiff was entitled to recover for his wife's services, rendered within the three months next after the 4th of May, 1847; that is to say, the defences of habitual drunkenness and desertion, set up under the statute, if made out, would only answer a part of the plaintiff's claim. The jury returned a general verdict for the defendant, and therefore must have found that the services were rendered under the agreement that nothing should be paid for them beyond the wife's support; and the rejection or admission of evidence relating to the other grounds of defence is immaterial, unless the court can see ground to suppose that the defendant suffered some prejudice from the course which the trial took. In our practice, which allows several grounds of defence to be set up in the same trial, it must often happen that evidence may be competent to maintain one defence that would have no legal bearing on the others. Such evidence, however, cannot be excluded, and must be left to the jury under proper instructions to disregard it, except where it is legally competent; and such instructions, in the absence of any exception to the contrary, we must presume to have been given in this case. If the evidence relating to the defence of habitual drunkenness is to be regarded

as having no legal bearing on the question of the contract set up, we must understand that it was introduced fairly, with the *bona fide* intention of establishing that defence, and the defendant has no legal ground for complaint. The present practice of allowing numerous defences to be made under the general issue to the same action, necessarily involves this as well as many other inconveniences.

The question on the first ground of defence was, whether the plaintiff's wife worked under a valid contract that nothing should be paid for her services beyond her support. The evidence was direct that the wife made such a bargain, and the husband would be bound by it if the wife was authorized to make it as his agent.

The agency of the wife for the husband is sometimes implied in law, from the circumstances and conduct of the husband, when no actual authority has been given; as, where the husband turns his wife out of his house without cause, and without providing for her support, the law clothes her with authority to charge him, as his agent, for her necessary support, and in such case it would not avail the husband to prove negatively that he gave no authority.

In other cases the liability of the husband, on contracts made by the wife, arises from the wife's being his agent, by previous authority, or subsequent ratification, expressed or implied; and in such case the agency is to found by the jury on the evidence as matter of fact.

Where the question of the wife's agency is left to be found by the jury, it is most commonly inferred without direct evidence, from circumstances, and the manner in which the husband and wife live, whether together or apart. Story on Contracts 96; 1 Greenl. Ev., sec. 185.

In this case, the evidence introduced to prove desertion by the husband, and neglect to furnish the wife proper support, was competent, as tending to raise a presumption that she was allowed by him to make a contract for obtaining, by her own labor, the necessary support which he neglected to provide for her otherwise. *Roch* v. *Miles*, 2 Conn. 638; *Castell* v. *Castell*, 8

---

Chamberlain *v.* Davis.

---

Black. 240 ; *Gray* v. *Otis*, 11 Vt. 628 ; *Cox* v. *Hoffman*, 4 Dev. & Bat. 180 ; *Hopkins* v. *Mollineux*, 4 Wend. 465; *Montague* v. *Benedict*, 3 B. & C. 631 ; *Smallpiece* v. *Dawes*, 7 C. & P. 40 ; *Bentley* v. *Griffin*, 5 Taunt. 56 ; *Holt* v. *Brien*, 4 B. & Ald. 252 ; *Freestone* v. *Butcher*, 9 C. & P. 643 ; Reeve on the Domestic Relations 80.

The evidence in the present case went to show that the husband had neglected to make suitable provision for the wife's support, and that she had no other means to obtain the necessary support except by her own labor.   On such a state of facts it is by no means clear that the law would not imply an authority in the wife to make a reasonable contract for applying her own labor to her support, on the same principle that she could bind him by her contract for necessaries.   The case of *Roch* v. *Miles*, 2 Conn. 638, would seem to go upon that ground.

There was abundant evidence from which the jury might find that the plaintiff knew his wife was working for the defendant on a bargain that she should receive nothing for her services beyond her support.  She had lived with the defendant and worked for him, with the exception of a short interval, from 1833.  The evidence tended to show that this bargain was made as early as 1839, and the terms of it repeatedly stated over, at different times, till 1847.   The jury might well find, without direct evidence, that the husband, knowing all this time his wife was working for the defendant, would be informed of the terms, and assent to them.   The plaintiff and the defendant had a settlement in May, 1847, which purported to be of all their affairs, and nothing was allowed or claimed in that settlement for the wife's services ; from which the inference might be fairly drawn that the husband was informed of the bargain the wife had made to work for her support, and assented to it.

This settlement was evidence that she had previously worked for her support, and was to have nothing more ; and if she continued on in the same way, without a new bargain, the presumption would be that she worked on the same terms.  *Richardson* v. *Franconia Iron Works*, 5. N. H. 294.

The admissions of the plaintiff's wife as to past transactions were properly rejected.  Where the wife acts as agent of the husband, her statements, made in execution of the agency, bind him as in the case of other agents; but the admissions of the wife, as such, are not competent evidence against the husband. 1 Greenl. Ev., sec. 189.

The communications made by Mitchell to Hobbs and Sanborn appear to have been made on account of the defendant.  They were, then, his communications made through Mitchell, who acted as his agent, and were made to Hobbs and Sanborn as the legal advisers of the defendant.  The relation of counsel and client existed between the defendant and Hobbs and Sanborn.  The statement was made on behalf of the defendant, and related to the subject upon which the counsel were consulted.  It was, then, a confidential communication made by the client, through an agent, to his counsel.  This brings the case within the rule which protects the communications of a client, made to a legal adviser in the course of a professional employment, against disclosure in any suit.  To give the communication this character it is not necessary that a suit shall be pending, or even contemplated, nor that the communication should be made by the client in person ?  Was it a professional confidence ?  If so, it cannot be disclosed.  *Greenough* v. *Gaskell,* 1 Milne & Keene 98 ; *Brown* v. *Payson,* 6 N. H. 433 ; Greenl. Ev., sec. 237, *et seq.*