[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT
Francis X. Scianna died on September 15, 1993, leaving behind a mountain of medical debts and a wife who had been separated CT Page 2390 from him when he incurred those debts. He left behind a knotty problem of statutory construction as well. This has come about because the Yale University School of Medicine ("Yale"), which provided medical treatment to Mr. Scianna, has chosen to sue his wife, Christine Scianna, under a statute, Conn. Gen. Stat. §46b-37, which, it turns out, is extremely problematic when applied to the facts of this case.
This case comes before the court on Christine Scianna's motion for summary judgment. (To avoid confusion, the Sciannas will be referred to by their first names.)
For the reasons discussed below, I conclude that there is no genuine issue as to any material fact and that Christine is entitled to judgment as a matter of law.
A procedural difficulty must be confronted at the outset. Christine's motion for summary judgment is actually the second that she has filed in this action. Her first motion for summary judgment (no. 108) was denied by the Hon. Joseph A. Licari, Jr. on July 8, 1996, on the ground that she had submitted insufficient documentation to substantiate her claim. She subsequently filed a second motion — the one now before the court — with additional documentation. Is this procedure permissible? Common sense and legal precedent establish that it is.
A trial court's denial of a motion for summary judgment is not res judicata. United States v. Horton, 622 F.2d 144, 148 (5th Cir. 1980). While it does establish the law of the case upon the legal issues decided, "[t]he law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be involved." Breen v. Phelps, 186 Conn. 86, 99, 439 A.2d 1066
(1982). If a moving party shows good reason for departing from the prior ruling, a renewed motion for summary judgment is in the interest of effective judicial administration. 6 James Wm. Moore,Moore's Federal Practice ¶ 56.14[2] (2d ed 1996). The purpose of summary judgment, as is well known, is to save the parties and the court the time and expense of trial when there is no genuine issue as to any material fact. If that purpose can appropriately be accomplished on a renewed motion for summary judgment, it would not be in the interest of justice to deny the motion merely because an earlier motion, less fully documented, had been denied. It is appropriate to proceed to the merits. CT Page 2391
Christine's submissions establish that she and Francis were married in 1971. They had three children, born between 1971 and 1979. Christine and Francis separated in June 1991. She resided in Trumbull with the children, and Francis resided at a separate address. On May 4, 1992, Christine brought an action for a legal separation in the Fairfield Judicial District Superior Court.Scianna v. Scianna, No. 294232 (Fairfield J.D. May 4, 1992). The action was withdrawn on April 13, 1993, but the parties agree that Christine remained separated from Francis until his death several months later. Christine's affidavit submitted in the present case states that, during the entire period of separation, Francis provided support to her in the form of money for food, mortgage payments, and the payment of bills and expenses.
Yale began to treat Francis on November 4, 1992. He died on September 15, 1993, owing Yale a substantial sum for medical services. Yale commenced this action for damages, which names Christine as the sole defendant, on May 19, 1995. The complaint consists of a single count, alleging that Christine is responsible for the medical expenses in question pursuant to § 46b-37. On August 17, 1995, Christine filed her answer and special defenses. One of her special defenses is that no action may be maintained against her under § 46b-37 because of the fact that she and Francis were separated at the time the liability was allegedly incurred. Christine subsequently filed the motions for summary judgment that have been described.
The focal point of this case is § 46b-37 (d), which provides that:
 No action may be maintained against either spouse under the provisions of this section, either during or after any period of separation from the other spouse, for any liability incurred by the other spouse during the separation, if, during the separation the spouse who is liable for support of the other spouse has provided the other spouse with reasonable support.
The application of this statutory text to the facts at hand involves considerable uncertainty. The problem lies in the statute's requirement that the availability of what might be called the separation defense depends on the provision of reasonable support. This provision makes sense when the person being sued is the spouse obligated to provide support. If that spouse chooses not to comply with his support obligation he is CT Page 2392 undeserving of the law's solicitude and can justly be sued for services rendered to the unsupported spouse. But what if the person being sued is the recipient of support? How can the law justly hinge the availability of the separation defense on the provision of reasonable support under these circumstances? That is the problem in this case.
To put the problem graphically, suppose that there are two spouses, Ann and Betty, each separated from her respective husband. Ann, whose husband generously provides her with reasonable support, lives a life of luxury and ease. Betty, whose husband fails a provide her with reasonable support, lives a life of privation and want. Each husband dies after receiving medical treatment, and Ann and Betty are subsequently sued by the providers of medical services. If the statutory text is to be applied on its face, Ann will be able to assert the separation defense because reasonable support has been provided. Betty, in contrast, will be unable to assert the defense because, in her case, reasonable support has not been provided. The fortunate Ann walks off scot-free. The unfortunate Betty must pay her ignominious husband's debt in full. This distinction is plainly contrary to the principles of justice.
Both parties, to their credit, recognize that the distinction seemingly required by the statutory text is so fundamentally unfair that it cannot be countenanced. They differ, however, on the appropriate judicial solution. Yale contends that the separation defense should be limited to spouses obligated to provide support ("provider spouses"). Christine, in contrast, argues that the separation defense should be made available to all spouses receiving support or entitled to receive it ("recipient spouses"), regardless of whether the support paid is, in fact, reasonable. For reasons of text, doctrine, and history, Christine has the better argument.
The statutory text, to begin with, is expressly applicable to "either spouse." There is no way, consistent with the English language, that this phrase can be limited to provider spouses. If the legislature had intended to limit the separation defense to provider spouses, it could easily have done so. It did not.
In the second place, a restriction of the separation defense to provider spouses would create serious problems of its own. Provider spouses have greater resources than recipient spouses. That is why they are provider spouses. Recipient spouses are CT Page 2393 recipient spouses precisely because their relative lack of resources places them in that unenviable class. Both provider spouses and recipient spouses may be sued under § 46b-37. Given these considerations, the granting of the separation defense to provider spouses and the denial of that defense to recipient spouses would be precisely wrongheaded. At a minimum, this is not a distinction that the court should stretch the statutory text beyond recognition in order to create.
This analysis indicates that the problem at hand is susceptible to only one rational solution. Let us return to the fortunate Ann and the unfortunate Betty. A faithful application of the statutory text will grant the separation defense to Ann and not Betty. This application fails to comport with the demands of justice and the requirement of equal protection. As mentioned. both parties agree that this interpretation cannot be countenanced. Only two alternatives remain, each of which unavoidably requires a stretching of the statutory text. Yale's solution is to deny the separation defense to both Ann and Betty but to leave the defense available to Ann's husband. For reasons just discussed, the medicine assertedly provided by this analysis would be worse than the disease. The only remaining solution is that proposed by Christine, namely to grant the separation defense to Ann and Betty alike.
In addition to its logical attractions, Christine's solution is more faithful to the principles underlying the statutory text. These principles are illuminated by the statute's rich history.Yale University School of Medicine v. Collier, 206 Conn. 31,36-37, 536 A.2d 588 (1988). As Collier points out, this history is inextricably linked with the fundamental changes in society and the status of women that have occurred in the course of our nation's growth. Id. at 35.
To state a complex matter briefly, at common law, married women had no property and therefore could make no contracts. As Blackstone put it, "the very being or legal existence of the woman is suspended during the marriage." 1 William Blackstone,Commentaries on the Laws of England 430 (1765). At any early date, however, the English courts created a common law right of action now known as the doctrine of necessaries. The idea was that if a man wrongfully deserted his wife and left her destitute, she became his "agent of necessity" and could pledge his credit for necessaries. 3 W.S. Holdsworth, A History ofEnglish Law 530 (3d ed. 1923). The husband could then be sued CT Page 2394 directly on the asserted credit. Significantly, for purposes of modern constitutional doctrine, this cause of action could only be asserted against husbands. "Because the duty of support was uniquely the husband's obligation, and because coverture restricted the wife's access to the economic realm, the doctrine did not impose a similar liability upon married women." Connor v.Southwest Florida Regional Medical Center, Inc., 668 So.2d 175,175-76 (Fla. 1995).
The common law doctrine of necessaries was recognized in Connecticut at an early date. See Rotch v. Miles, 2 Conn. 638
(1818); 1 Zephaniah Swift, A System of the Laws of the State of Connecticut 197 (1795). That doctrine, however, had numerous shortcomings in addition to its overt gender bias. The common law defined necessaries "to consist only of necessary food, drink, clothing, washing, physic, instruction, and a competent place of residence." Shelton v. Pendleton, 18 Conn. 417, 423 (1847). Its sole purpose was to preserve "the life and health of the wite."Id. Moreover, the doctrine was available only in cases of nonsupport. The husband "could at any time put an end to the right of the plaintiff to supply [the wife] by himself supplying her." Pierpont v. Wilson, 49 Conn. 450, 451 (1881).
The Married Women's Act of 1877; 1877 Conn. Pub. Acts. ch. 114; profoundly altered this legal landscape. Married women could now own property and make contracts with third persons. Id. § 1. A new cause of action was created as well. Both spouses were "liable where any article purchased by either shall have in fact gone to the support of the family, or for the Joint benefit of both, or for the reasonable apparel of the wife, or for her reasonable support while abandoned by her husband." Id. § 2. Our Supreme Court held early on that this statutory remedy was `in addition to and independent of' the common law doctrine of necessities. Buckingham v. Hurd, 52 Conn. 404, 406 (1884).
In the years following its enactment, the Married Women's Act was liberally construed. In Howland Dry Goods Co. v. Welch,94 Conn. 265, 108 A. 510 (1919), our Supreme Court held that the statutory cause of action was not limited to cases of nonsupport. A husband could provide his wife with reasonable support and still be subject to the statutory action. The remedy of the statute rested "upon a finding that the purchases `have in fact gone to the support of the family.'" Id. at 267. Any hardship on the husband was outweighed by the legislature's "desire to give to the wife a remedy more liberal than the common law gave her." CT Page 2395Id. at 268. Accord Baledes v. Greenbaum, 112 Conn. 64, 151 A. 333
(1930).
Motivated by the judicial decisions just discussed, the legislature amended the Married Women's Act in 1935 to provide that, "No action shall be maintained against a husband under the provisions of this section, either during or subsequent to any period of separation from his wife, for any liability incurred by her during such period of separation, if during such period, he shall have provided her with reasonable support." Conn. Gen. Stat. § 1596c (1935 Supp.). This provision gave separated husbands a statutory defense that they had not previously enjoyed. In a time of national depression and tradition bound gender roles it was obviously not contemplated that separated wives, particularly those who had been denied support, would be sued in the first place.
The ensuing decades witnessed further profound changes in the status of women in our society. By 1975, the Supreme Court could say that, "No longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas." Stanton v. Stanton,421 U.S. 7, 14-15 (1975). In 1974, Connecticut amended its constitution to include an equal rights amendment, prohibiting discrimination because of sex. Conn. Const. amend. V. These developments plainly rendered the language of the 1935 amendment to the Married Women's Act socially obsolete and constitutionally vulnerable.See Yale University School Medicine v. Collier, supra,206 Conn. at 35, Condore v. Prince George's County, 425 A.2d 1011 (Md. 1981).
The legislature responded to these developments by enacting 1977 Conn. Acts No. 77-288. That act expanded the language of the 1935 amendment to make the separation defense equally available to both genders. The statute now provided that, "No action shall be maintained against either spouse under the provisions of this section either during or subsequent to any period of separation from the other spouse, for any liability incurred by such other spouse during such period of separation, if during such period the spouse who is liable for support of the other spouse has provided such other spouse with reasonable support." Id. § 1. This is essentially the language of the statute today. (A few minor phraseological changes were made by 1978 Conn. Acts. No. 78-230, § 17.) CT Page 2396
The 1977 act makes two changes of particular significance to this case. First, and most obviously, it expressly makes the separation defense available to husbands and wives alike. Second, by its liberal use of the phrases "either spouse" and "the other spouse," the act remakes the defense available to provider spouses and recipient spouses alike, at least as long as reasonable support is paid.
The clear trend of the legislature in this century has thus been to expand the class of persons immunized from the statutory cause of action. The 1935 act protected husbands who provided reasonable support for their wives. The 1977 act protected both genders and provider and recipient spouses alike. If the statutory construction problem presented here can be solved only by an expansion or contraction of the class of persons entitled to the separation defense, a reasonable expansion of that class to include recipient spouses who do not receive reasonable support will be faithful to the underlying principles of the legislation.
This resolution has the additional virtue of fidelity to an historic concern of the common law as well. When their now-antiquated notions of gender are put to one side, the old common law cases reveal an understanding that in many, perhaps most, marriages, one spouse will be economically dependent upon another. A provider spouse who fails to provide reasonable support has always been deemed unworthy of the law's protection. A recipient spouse who is deprived of reasonable support has always been deemed worthy of the law's solicitude. An expansion of the protection afforded by § 46b-37 (d) to recipient spouses who do not receive reasonable support — together with a continued denial of that protection to provider spouses who do not provide reasonable support — will be faithful to these age-old concerns.
With these principles in mind, the problem presented by this case can be readily resolved. Yale has not asserted a common law cause of action nor, for reasons already discussed, could it assert one. Its sole cause of action is the statutory cause of action provided by § 46b-37. Sec. 46b-37 (d), as construed above, provides that no action may be maintained against a spouse under this section for any liability incurred by the other spouse, during a period of separation, if during the separation the spouse against whom the action is brought was supported by the other spouse, whether the actual support payments were CT Page 2397 reasonable or not. Christine has established that the liability in question here was incurred by her spouse during a period of separation. She has also established that she was supported by her spouse during this period. She need not establish that the support payments in question were reasonable.
The motion for summary judgment is granted.
Blue, J.