## MAUREEN S. CONDORE *v.* PRINCE GEORGE'S COUNTY, MARYLAND

[No. 6, September Term, 1980.]

*Decided February 19, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Thomas Patrick O'Reilly,* with whom were *O'Reilly & Serio* on the brief, for appellant.

*Robert B. Ostrom, County Attorney,* and *Michael Bereston, Associate County Attorney,* with whom was *Carl Harris, Deputy County Attorney,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court. DAVIDSON and RODOWSKY, JJ., dissent. RODOWSKY, J., filed a dissenting opinion at page 533 *infra,* in which DAVIDSON, J., concurs in part.

The Equal Rights Amendment (ERA), Article 46 of the Maryland Declaration of Rights, provides:

> "Equality of rights under the law shall not be abridged or denied because of sex."

The primary issue in this case is whether the ERA modifies the common law of Maryland by imposing upon a wife a legal obligation to pay for medical services rendered to her husband. The Circuit Court for Prince George's County (Blackwell, J.) held that the appellant, Maureen Condore, was liable to pay the hospital bill incurred by her deceased husband, Louis, in the appellee county hospital. The court concluded that the ERA mandated this result, without regard to whether the appellant contracted with the hospital to pay for services rendered to her husband. The wife appealed. We granted certiorari prior to decision by the Court of Special Appeals to consider the significant constitutional issue raised in the case.

I

On November 4, 1976, Louis Condore was admitted to the Prince George's County General Hospital. He signed a hospital admission form agreeing to be responsible for all charges incurred from his admission until his discharge.[1] Louis died in the hospital on December 11, 1976, after incurring a substantial hospital bill for services rendered to him. Louis' hospital insurer paid the entire amount of the hospital bill except for $3,435 for services recorded on the bill under the heading "Date of Service" as having been rendered on December 12 and 13 after Louis' death.

The County sued Mrs. Condore in assumpsit upon the common counts for the unpaid amount. The County moved for summary judgment, attaching the hospital bill as an exhibit, together with an affidavit of Louis' physician attesting to the medical necessity for the services rendered. Also attached to the motion were two affidavits from the hospital's Manager of Special Accounts stating, on personal knowledge, that he kept books of special accounts in the regular course of the hospital's business and that it was the regular course of the hospital's business to keep such accounts; that in accordance with its regular practice the hospital maintained an account for services rendered to Louis Condore; that the Condore account appended to the summary judgment motion was true and correct, the entries having been made at the time or shortly after the time that the services were provided; and

> "that the dates that appear under date of service on plaintiff's billing statements, after December 11, 1976, the date of patient's death, in fact, represent the dates that the service was posted and these services were, in fact, rendered but were not posted until after the patient was deceased."

---

1. The form reads as follows:

"... I/we guarantee payment to Prince George's General Hospital of all charges incurred by the above patient from date of admission until discharge." Above a line on the form marked "Person Responsible" appears the signature of Louis Condore.

The appellant filed a motion opposing summary judgment, asserting that she had never agreed to be responsible for her husband's hospital bill and was therefore not indebted to the hospital.

At the hearing on the hospital's summary judgment motion, the appellant argued that the motion should be denied because there was a material dispute of fact concerning the correctness of the bill, namely, that the hospital bill showed on its face that the disputed services were rendered after the date of her husband's death. The court, referring to the affidavit of the hospital's Manager of Special Accounts, said that the evidence before it, under oath, was that the services were incurred before Louis' death, although posted to his account on dates subsequent to his death. As to the amount of the bill owing to the hospital, and whether the services had been rendered prior to Louis' death, the court concluded that there was no genuine dispute between the parties as to any material fact.

The court next considered the parties' arguments as to whether, as a matter of law, the appellant was legally responsible for her husband's hospital bill. The County's position was that the ERA modified the common law duty of the husband to be responsible for his wife's necessaries by imposing a corresponding legal obligation on the wife to pay for her husband's necessaries. The County did not rely upon the provisions of Maryland Code (1957, 1980 Repl. Vol.), Art. 45, § 21, which specify that the husband is liable for necessaries supplied to his wife. Although it suggested that § 21 may be unconstitutional under the ERA for failure to impose a similar support obligation on the wife, the County maintained that the statute was not involved in the case, since it relied solely upon the ERA-modified common law to recover from the wife. The appellant argued that the ERA imposed no duty upon her to pay for her husband's necessaries. She suggested that Art. 45, § 21 may be unconstitutional, in which event there would be no legal obligation on the part of either spouse to pay for the necessaries of the other. However, the appellant insisted

that the statute was not involved in the case and that the court should not rule on its constitutionality.

The court held that the ERA expanded the "equal rights concept" to require acceptance by women of "the burdens as well as the benefits of such expansion." In granting summary judgment for the County, the court said:

> "[I]n Maryland at the present time the wife is as responsible for her husband's necessities, such as medical expenses, as would the husband be responsible for the wife's necessities . . . without the benefit of any amendment in the code provisions [Art. 45, § 21]."

Appellant subsequently filed a motion for rehearing and for summary judgment in her favor, raising the same issues previously adjudicated by the court, but adding that no factual basis was contained in the affidavit of the hospital's Manager of Special Accounts demonstrating that he in fact had personal knowledge of if and when the disputed services were rendered. The court denied the motion.

Before us, the appellant urges that the lower court was wrong when, in granting summary judgment for the County, it determined that there was no genuine dispute as to any material fact concerning the amount properly owed to the hospital for services rendered to appellant's husband. Whether the court erred on this point need not be here considered for we hold, as a matter of law, that the appellant is not legally obligated in this case to pay her husband's hospital bill.

## II

Under the common law of Maryland, prior to the adoption of the ERA, the husband had a legal duty to supply his wife with necessaries suitable to their station in life, but the wife had no corresponding obligation to support her husband, or supply him with necessaries, even if she had the financial means to do so. *Ewell v. State,* 207 Md. 288, 114 A.2d 66 (1955); *Coastal Tank Lines, Inc. v. Canoles,* 207 Md. 37, 113

A.2d 82 (1955); *Stonesifer v. Shriver,* 100 Md. 24, 59 A. 139 (1904). This well-settled principle was an outgrowth of the early common law which placed married women under various legal disabilities, *e.g.,* (1) the legal existence of the wife was deemed merged in that of the husband and they were regarded as one person, *Criminal Inj. Comp. Bd. v. Remson,* 282 Md. 168, 384 A.2d 58 (1978); *Sezzin v. Stark,* 187 Md. 241, 49 A.2d 742 (1946); *Joyce v. Joyce,* 10 Md. App. 516, 276 A.2d 692 (1970); (2) upon marriage, the wife's personal property became vested in the husband and was subject to the claims of his creditors, *Rowe v. Dept. of Mental Hygiene,* 247 Md. 542, 233 A.2d 769 (1967); *Clark v. Wootton,* 63 Md. 113 (1885); *Bayne v. State, Use of Edelen,* 62 Md. 100 (1884); and (3) the husband was entitled to the wife's services and she was legally incapable of making contracts in her own name, *Coastal Tank, supra; Sezzin, supra; Furstenburg v. Furstenburg,* 152 Md. 247, 136 A.2d 534 (1927). The husband's common law duty to supply his wife with necessaries included medical care; the wife's right to obtain such care stemmed from the marital relation itself and the husband's obligations incident to it. *Rowe, supra; Kerner v. Eastern Hospital,* 210 Md. 375, 123 A.2d 333 (1956); *Ewell, supra; Anderson v. Carter,* 175 Md. 540, 2 A.2d 677 (1938); *McFerren v. Goldsmith-Stern Co.,* 137 Md. 573, 113 A. 107 (1921); *Stonsifer, supra.*

Because of the common law doctrine subjecting the property of the wife to the claims of the husband's creditors, the Maryland Constitution of 1851, Art. 3, § 38 directed the General Assembly to pass laws to protect the property of the wife from the debts of the husband. Consistent with this constitutional mandate, the legislature enacted various statutes to afford married women the right to a separate estate and to protect it from the husband's creditors. See Maryland Code (1860, 1861-1867 Supp.), Art. 45, §§ 1 and 2. In the present Maryland Constitution — that of 1867 — the following provision was included in Art. III, § 43:

> "The property of the wife shall be protected from the debts of her husband."

To place married women on a more equal footing with their husbands, a number of "Married Women's Acts" were subsequently enacted by the legislature, primarily ch. 267 of the Acts of 1892 and ch. 457 of the Acts of 1898. These statutes are now codified as Maryland Code (1957, 1980 Repl. Vol.), Art. 45, §§ 1-21. Section 1, in implementation of Art. III, § 43 of the Constitution of Maryland, protects the property of a married woman, however acquired, including property acquired "by her own skill, labor or personal exertions" from the debts of the husband. Section 4 provides that married women shall hold their property "for their separate use, as fully as if they were unmarried." Section 5 empowers married women "to engage in any business, and to contract, . . . as fully as if they were unmarried." This section also specifies that married women may be sued separately on their contracts and that a husband is not liable "upon any contract made by his wife in her own name and upon her own responsibility." Section 21 provides that nothing in the cited sections shall be construed "to relieve the husband from liability for the debts, contracts or engagements which the wife may incur or enter into upon [his] credit . . . or as his agent or for necessaries for herself or for his or their children; but as to all such cases his liability shall be or continue as at common law."

Although the provisions of Art. 45 enlarged rights and removed disabilities imposed on married women at common law, they did not abrogate the common law liability of the husband to provide his wife with necessaries. *Dudley v. Montgomery Ward & Co.,* 255 Md. 247, 257 A.2d 437 (1969); *Coastal Tank, supra; Gregg v. Gregg,* 199 Md. 662, 87 A.2d 581 (1952); *Riegger v. Brewing Company,* 178 Md. 518, 16 A.2d 99 (1940); *Noel v. O'Neill,* 128 Md. 202, 97 A. 513 (1916). The power vested in the wife by § 5 to contract as a principal in her own name, however, included contracts for necessaries. But the husband was relieved of responsibility on such contracts if the wife expressly contracted upon her sole credit to pay the debt incurred from her separate estate or the circumstances clearly showed that the wife assumed liability exclusive of the common law liability of the hus-

band. *Anderson, supra; Farver v. Pickett,* 162 Md. 10, 158 A. 29 (1932); *Barnes v. Starr,* 144 Md. 218, 124 A. 922 (1923); *Hood v. Hood,* 138 Md. 355, 113 A. 895 (1921); *Bliss v. Bliss,* 133 Md. 61, 104 A. 467 (1918); *Noel, supra.*

The liability of the wife for her husband's medical bill was squarely before the Court in *Rowe v. Dept. of Mental Hygiene,* 247 Md. 542, 233 A.2d 769 (1967). In that pre-ERA case, judgment was rendered against the wife for medical care and maintenance supplied to her husband who was involuntarily committed to a state mental hospital for evaluation following indictment on a murder charge. Under then existing Maryland statutes, a wife was liable for the care and support of a husband within the institution. The wife sought reversal of the judgment against her, contending that under Art. III, § 43 of the Maryland Constitution, her "property . . . [was] protected from the debts of her husband." The State argued "that the marriage relation itself should operate to make a wife liable for her husband's medical and hospital bills . . . if she has the ability to do so . . . ." *Id.* at 546-47. The Court found no merit in the State's contention; it said:

"This argument must fall before the specific provisions of Section 43 of Article III of the Maryland Constitution." *Id.* at 547.

The Court also rejected the State's argument that under the statute the debt was that of the wife, not the husband.

This was the state of the Maryland law on the doctrine of necessaries when, on November 7, 1972, the people of this State approved the ERA, thereby adding to the Declaration of Rights the provision in Article 46 that "Equality of rights under the law shall not be abridged or denied because of sex." We first interpreted the provision in *Rand v. Rand,* 280 Md. 508, 374 A.2d 900 (1977), a case concerning parental liability for the support of minor children. The mother there contended that she was obligated under the common law to contribute to the support of her minor child only to the extent that the father was financially incapable of supporting the child. It was argued that the ERA changed the

common law rule to impose upon a mother liability equal with that of the father for the support of their minor children. We agreed, stating that the words of the ERA clearly and unambiguously mandated equality of rights between men and women and "can only mean that sex is not a factor." *Id.* at 512. We reviewed a number of cases in which similar equal rights amendments of other states had been interpreted, particularly *Darrin v. Gould,* 85 Wash. 2d 859, 540 P.2d 882 (1975), and *Henderson v. Henderson,* 458 Pa. 97, 327 A.2d 60 (1974). We noted that the Supreme Court of Washington declined in *Darrin* to consider whether, under that state's ERA, a sex-based classification could be sustained under either the rational relationship or strict scrutiny tests. That court held that the "overriding compelling state interest" in equalizing the rights and responsibilities of men and women had been determined by the people of Washington by their adoption of the ERA.[2] In *Henderson,* the court said that the thrust of the Pennsylvania ERA "is to insure equality of rights under the law and to eliminate sex as a basis for distinction." 327 A.2d at 62. The Pennsylvania Supreme Court, in concluding that sex is no longer "a permissible factor in the determination of [the] legal rights and legal responsibilities" of men and women, said:

"The law will not impose different benefits or different burdens upon the members of a society based on the fact that they may be man or woman."[3] *Id.*

In line with these cases, we concluded that the broad, sweeping and mandatory language of the Maryland ERA was "cogent evidence" that the people of this State "are fully committed to equal rights for men and women." 280 Md. at

---

**2.** The Washington ERA reads:

"Equality of rights and responsibility under the law shall not be denied or abridged on account of sex." Wash. Const., art. 31, § 1.

**3.** The Pennsylvania ERA provides:

"Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." Pa. Const., art. 1, § 28.

515. We said that the adoption of the ERA in Maryland "was intended to, and did, drastically alter traditional views of the validity of sex-based classifications." *Id.* at 516. Accordingly, we held in *Rand* that the parental obligation of child support was, in view of the provisions of the ERA, not primarily an obligation of the father, as at common law, but one to be shared equally by both parents in accordance with their respective financial resources.

In *Kline v. Ansell,* 287 Md. 585, 414 A.2d 929 (1980), we held, in light of the ERA as interpreted in *Rand,* that the common law action for criminal conversation, which was available only to husbands, was unconstitutional and therefore no longer viable in Maryland. The gravamen of that action was the wife's adultery. At common law, the husband was regarded as having a property right in the body of his wife. Thus, her adultery was considered an invasion of the husband's property rights and an injury to his feelings and sense of honor. Judge Davidson, for the Court, after noting the history and purpose of the action and its incompatibility with "today's sense of fairness ... [and] of the increasing personal and sexual freedom of women," *id.* at 589, observed:

> "At common law, the action for criminal conversation provided different benefits to and imposed different burdens upon men and women. Only a man could sue or be sued for criminal conversation. These facts remain unchanged under the common law as it exists in Maryland today. A man has a cause of action for criminal conversation, but a woman does not. Moreover, a man who engages in an act of sexual intercourse with another man's wife is civilly liable for damages, but a woman who, engages in a similar activity with another woman's husband is not. Thus, Maryland's law provides different benefits for and imposes different burdens upon its citizens based solely upon their sex. Such a result violates the ERA. ... The common law cause of action for criminal conversation is a vestige of the past. It cannot be reconciled with our commit-

ment to equality of the sexes." *Id.* at 592-93 (footnote omitted.)

In *Coleman v. State,* 37 Md. App. 322, 377 A.2d 553 (1977), the Court of Special Appeals, relying upon *Rand,* declared that a criminal statute punishing a husband for the desertion or non-support of his wife, without imposing a corresponding responsibility on a wife, was a sex-based classification which was unconstitutional in view of the ERA.[4] *Rand* and its progeny are in accord with cases construing similar equal rights amendments in other states. *See* Note, 90 A.L.R.3d 158-216 (1979).[5]

Gender-based classifications have also been held invalid under the Fourteenth Amendment to the federal constitution. In *Orr v. Orr,* 440 U.S. 268, 99 S. Ct. 1102, 59 L. Ed. 2d 306 (1979), the Supreme Court held that a statute under which husbands, but not wives, might be ordered to pay alimony violated the equal protection clause of the Fourteenth Amendment. In concluding that the sex-based classification was unconstitutional, the Court rejected the "old notion" that the woman is " 'destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas.' " [6] *Id.* at 280. State

---

**4.** The statute was amended by ch. 921 of the Acts of 1978 to apply equally to each spouse.

**5.** In Pennsylvania, one trial court held that the common law rule making the husband, but not the wife, liable for necessaries was modified by that state's ERA, so as to subject the wife to liability for the husband's medical expenses. Albert Einstein Med. Center v. Gold, 66 Pa. D. & C.2d 347 (C.P. 1974). Another Pennsylvania trial court invalidated the common law rule imposing liability for necessaries on a husband, refusing to extend it to impose liability upon a wife for her husband's medical bill. Albert Einstein Medical Center v. Nathans, 27 Pa. Fiduc. 581 (C.P. 1977).

**6.** *Orr* followed a line of cases in which the Supreme Court declared gender-based classifications to be unconstitutional. *See* Califano v. Goldfarb, 430 U.S. 199, 97 S. Ct. 1021, 51 L. Ed. 2d 270 (1977) (social security provision allowing benefits to widower only if he was receiving half of his support from his wife is unconstitutional); Craig v. Boren, 429 U.S. 190, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976) (law prohibiting beer sales to males under 21 and females under 18 is unconstitutional); Stanton v. Stanton, 421 U.S. 7, 95 S. Ct. 1373, 43 L. Ed. 2d 688 (1975) (law setting age of majority of women at 18, and men at 21 is unconstitutional); Weinberger v. Wiesenfeld, 420 U.S. 636, 95 S. Ct. 1225, 43 L. Ed. 2d 514 (1975) (social security law providing that survivors' benefits based on deceased husband's earnings are payable to wife and children but benefits based on deceased

courts, applying the Fourteenth Amendment equal protection clause, have reached the same result. *Hatcher v. Hatcher,* 265 Ark. 681, 580 S.W.2d 475 (1979); *Stitt v. Stitt,* 243 Ga. 301, 253 S.E.2d 764 (1979); *Lovell v. Lovell,* 378 So. 2d 418 (La. 1979); *Beal v. Beal,* 388 A.2d 72 (Me. 1978); *Buckner v. Buckner,* N.H., 415 A.2d 871 (1980); *Mitchell v. Mitchell,* 594 S.W.2d 699 (Tenn. 1980). Maryland's alimony statute was made gender-neutral by ch. 332 of the Acts of 1975.[7] *See Colburn v. Colburn,* 20 Md. App. 346, 316 A.2d 283 (1974). *See also Kerr v. Kerr,* 287 Md. 363, 412 A.2d 1001 (1980).

In *Jersey Shore, etc. v. Estate of Baum,* 84 N.J. 137, 417 A.2d 1003 (1980), the Supreme Court of New Jersey held that the common law rule affording unequal treatment as between husbands and wives respecting their liability for necessaries violated the Fourteenth Amendment's equal protection clause and a similar provision of the New Jersey Constitution. In that case, as here, a hospital sued a wife on the theory that the common law which imposed liability on a husband for necessaries furnished to a wife should be extended to create a corresponding duty on the part of the wife to pay for her husband's necessaries. In striking down the sex-based classification established by the common law doctrine, the court said:

"A modern marriage is a partnership, with neither spouse necessarily dependent financially on the other. Many women have shed their traditional

---

wife's earnings are payable only to children is unconstitutional); Frontiero v. Richardson, 411 U.S. 677, 93 S. Ct. 1764, 36 L. Ed. 2d 583 (1973) (requirement that a wife must show her husband is actually dependent in order to claim him as a dependent for purposes of armed forces benefits allowances is unconstitutional); Reed v. Reed, 404 U.S. 71, 92 S. Ct. 251, 30 L. Ed. 2d 225 (1971) (state law giving preference to men as administrators of estates violates equal protection). *See also* Wengler v. Druggists Mut. Ins. Co., 446 U.S. 142, 100 S. Ct. 1540, 64 L. Ed. 2d 107 (1980) (invalidating a state workers' compensation statute that required widowers but not widows to prove dependency); Califano v. Westcott, 443 U.S. 76, 99 S. Ct. 2655, 61 L. Ed. 2d 382 (1979) (social security law providing aid to families with dependent children when husband becomes unemployed, but not when wife becomes unemployed, is unconstitutional).

7. Pennsylvania's gender-based alimony pendente lite statute was declared unconstitutional under that state's ERA in Henderson v. Henderson, 458 Pa. 97, 327 A.2d 60 (1974).

dependence on their husbands for active roles as income earners."

\* \* \*

"Interdependence is the hallmark of a modern marriage. The common law rule imposing liability on husbands, but not wives, is an anachronism that no longer fits contemporary society. Under the present rule, even a husband who is economically dependent on his wife would be liable for the necessary expenses of both spouses, while the wife would not be liable for either. In perpetuating additional benefits for a wife when the benefits may not be needed, the rule runs afoul of the equal protection clause."

\* \* \*

". . . At one time, the status of married women might have justified placing on a husband the duty to pay for his wife's necessary expenses without a correlative duty on her part. As previously discussed, the imposition of that duty no longer comports with the role of a contemporary wife and concepts of a modern marriage. The common law must adapt to the progress of women in achieving economic equality and to the mutual sharing of all obligations by husbands and wives." *Id.* at 1008-1009.

The New Jersey court next considered the "various alternatives available in establishing a gender-neutral rule for the payment of necessary expenses incurred by either spouse." *Id.* at 1009. It said that in a modern marriage a husband and wife, whether contributing income or domestic services, are a financial unit; that a necessary expense incurred by one spouse benefits both; and that marriage is a shared enterprise. The court declined to extend the common law rule to require each spouse to be completely liable for the other's necessaries, terming such a solution

"equality with a vengeance" because it would result in the immediate exposure of the property of one spouse for a debt incurred by the other spouse, thereby affording a creditor "the same benefits as if both spouses had agreed to joint liability." *Id.* at 1009. "Neither equity nor reality," the court said, "justifies imposing unqualified liability on one spouse for the debts of the other or exempting one spouse from liability for the necessary expenses of the other." *Id.* Instead, it held that

> "both spouses are liable for the necessary expenses incurred by either spouse. In a viable marriage, the marital partners can decide between themselves how to pay their debts. A creditor providing necessaries to one spouse can assume that the financial resources of both spouses are available for payment. However, in the absence of an agreement, the income and property of one spouse should not be exposed to satisfy a debt incurred by the other spouse unless the assets of the spouse who incurred the debt are insufficient.
>
> ". . . The reasonable expectations of marital partners are that their income and assets are held for the benefit of the marital partnership and, incidentally, for creditors who provide necessaries for either spouse. However, it would be unfair to accord the same rights to a creditor who provides necessaries on the basis of an agreement with one spouse as to a creditor who has an agreement with both spouses. In the absence of such an agreement, a creditor should have recourse to the property of both spouses only where the financial resources of the spouse who incurred the necessary expense are insufficient. Marshalling the marital resources in that manner grants some protection to a spouse who has not expressly consented to that debt." *Id.*

To achieve "substantial justice in view of the reasonable expectations of the parties," *id.,* and taking into account the

parties' reliance on the prior law, the New Jersey court afforded its new rule a purely prospective application, *i.e.,* to debts incurred after the date of its decision. It said that the wife properly assumed that she incurred no liability when the hospital provided services to her husband, and that the hospital did not expect payment from her in providing those services.

In view of the principles espoused in these cases, we think the common law doctrine of necessaries is predicated upon a sex-based classification which is unconstitutional under the ERA. While the lower court did not directly pass upon the constitutionality of Art. 45, § 21, the provisions of that statute relating to the husband's liability for his wife's necessaries, being declaratory of the common law rule, are also invalid under the ERA.

The County urges that the ERA has itself modified and superseded the common law doctrine as to necessaries by imposing upon the wife a reciprocal liability for necessaries supplied to the husband. With regard to Art. III, § 43 of the Maryland Constitution, which protects the "property" of the wife "from the debts of her husband," the County argues that in view of the later-enacted ERA, the wife's obligation to pay her husband's medical bill can no longer be considered a debt, but rather a constitutional responsibility which stems from the reciprocal duty of marital support mandated by the ERA. The appellant, on the other hand, relies upon Art. III, § 43 of the Constitution of Maryland, as applied in *Rowe v. Dept. of Mental Hygiene,* 247 Md. 542, 233 A.2d 769 (1967), and contends that notwithstanding the ERA she is afforded special constitutional protection against liability for the payment of her husband's hospital expenses. Appellant also argues that any change in the common law, as declared in Art. 45, § 21, should be made by the legislature and not the courts.

Of course, the common law doctrine of necessaries is subject to change by constitutional or legislative enactment; it is also subject to change by judicial decision where the Court finds, with or without regard to the ERA, that the common

law rule is a vestige of the past, no longer suitable to the circumstances of our people. *Ansell, supra; Lewis v. State,* 285 Md. 705, 404 A.2d 1073 (1979); *Pope v. State,* 284 Md. 309, 396 A.2d 1054 (1979). Although frequently importuned to do so, the legislature has not changed the common law necessaries doctrine, as reflected in Art. 45, § 21. As stated in the 1978 Report of the Governor's Commission to Study Implementation of the Equal Rights Amendment, between 1973 and 1976 a number of bills were introduced in the General Assembly to remove sex discrimination from the common law necessaries doctrine. Some of the bills took the approach of eliminating the doctrine of necessaries and some sought to extend it to both spouses. In 1978, a bill was introduced to sex-neutralize the law relating to necessaries, and to permit the "homemaking spouse" of either sex to pledge the credit of the other. None of the bills was enacted. Contrasted with this legislative inaction, the General Assembly has, as we have already observed, sex-neutralized criminal statutes pertaining to spousal non-support and desertion, as well as the obligation to pay alimony which, historically, was based on the common law duty of the husband to support his wife. *See Bender v. Bender,* 282 Md. 525, 386 A.2d 772 (1978). Like alimony, the historical basis underlying the necessaries doctrine was the husband's unilateral duty to support his wife.

In *Rand,* we extended the common law rule as to support by a mother of her minor children by making her equally responsible with the father to the extent of her financial resources. We did not create a new cause of action against the mother in *Rand* because, under the common law, she was secondarily liable for child support, the father's obligation being the primary one. In *Ansell,* we declined to extend the common law cause of action for criminal conversation to wives, finding that the action was a vestige of the past, no longer a suitable part of the common law of this State. In *Deems v. Western Maryland Ry.,* 247 Md. 95, 231 A.2d 514 (1967), a pre-ERA case, we modified the common law rule pertaining to actions for loss of consortium, which was then

not available to a wife. We changed the common law, making the action available only jointly to husbands and wives as a legal entity.

To extend the common law necessaries doctrine to impose liability upon wives, as was done by the Supreme Court of New Jersey in the *Jersey Shore* case, would be to create a cause of action against a wife where none has previously existed. We do not doubt our authority so to change the common law to conform the necessaries doctrine to the equality of rights principle which underlies the ERA. Plainly, if the necessaries doctrine is to be retained, the provisions of Art. III, § 43 of the Constitution, protecting the property of the wife from the debts of the husband, must yield to the extent necessary to accommodate the later-enacted dictates of the ERA. *See Kadan v. Bd. of Sup. of Elections,* 273 Md. 406, 329 A.2d 702 (1974); *Boyer v. Thurston,* 247 Md. 279, 231 A.2d 50 (1967). In other words, § 43 is not a bar to the equalizing of burdens as between husbands and wives within the operative reach of the ERA's provisions.[8] The general purpose of the ERA to proscribe sex-based classifications offensive to its provisions would also be satisfied by eliminating the necessaries doctrine in its entirety. We do not think that the ERA, by its terms, necessarily requires that either course of action must be taken, since both are responsive to its mandate. Which best serves the societal need is, we think, a matter of such fundamental policy that it should be determined by the legislature. Consequently, rather than judicially expand the common law doctrine by creating a new reciprocal liability upon the wife, pending legislative consideration of the matter, we conclude that the ancient necessaries doctrine, violative as it is of the ERA, is no longer part of the common law of this State and that neither the husband nor the wife

---

8. Amendments to Art. III, § 43 were proposed in 1974 and 1975 to insulate any "person" from liability for the debts of that person's spouse, and in 1976 to provide that "persons" are liable for the debts of their spouses "only as to necessaries." None of these proposed amendments was approved by the legislature. *See,* respectively, SB 126 (1974), SB 52 (1975) and SB 206 (1976).

is liable, absent a contract, express or implied, for necessaries such as medical care supplied to the other.

*Judgment reversed; costs to be paid*
*by Prince George's County.*

*Rodowsky, J., dissenting:*

I agree that this Court has the power to decide, based on the ERA, or on evolving common law grounds, that the necessaries doctrine applies alike to both sexes. An expanded application, on a prospective basis, should be the holding of this case.

The majority's apprehension over the sweep of a sex neutral rule is, in my view, not justified either by an analysis of the rule as it operated at common law or as it operates under equal credit opportunity acts. Further, the ERA and acts of the General Assembly have made it plain beyond doubt that family support obligations are no longer exclusively imposed on the male. Contrary to that policy, the Court has in this case opted to void a support remedy, rather than expand it. The Court has eradicated the necessaries doctrine without expressing any consideration of its possible significance in current society. Because until today the law of necessaries has historically been relied upon by persons who sell goods or render services without being paid in full, in cash, in advance, I believe the doctrine's judicial abrogation to be most unwise. That abrogation of the doctrine, rather than its extension to credit worthy women, is done in the name of the ERA strikes me as Orwellian.

I

A sex neutral application of the necessaries doctrine would not, in my opinion, have the effect of automatically converting every purchase of necessaries by a husband into a joint obligation with his wife. The majority seems to assume it would. It is clear to me that had Maureen S. Condore (Maureen) been the spouse admitted to Prince George's General Hospital (the Hospital) under facts

otherwise identical to those presented here, the Hospital, as plaintiff, would not be entitled to a summary judgment against the husband, Louis Condore (Louis), under the common law doctrine of necessaries. The majority assumes that in a reversed situation, Louis would have no defense and that, consequently, Maureen has no legal defense except on constitutional grounds. Because this assumption appears to weigh heavily with the Court in resolving the ultimate question *against* retention and, thereby, non-discriminatory application of the necessaries doctrine, the validity under Maryland law of that assumption should be examined. It may conveniently be tested on the facts of this case.

Here the Hospital in no way relies on an express contract with Maureen. The Hospital does not contend that Louis was in fact the agent of Maureen. Nor does the Hospital rest its case on some cousins of the necessaries doctrine which may easily be confused with it, *e.g.,* a presumption of actual authority [1] or apparent authority based upon a course of dealing.[2] The Hospital's position is that its medical services were necessaries, that they were rendered to Louis, that Maureen was the wife of Louis throughout the relevant period and that, because Louis would be liable under the

---

**1.** *See* Noel v. O'Neill, 128 Md. 202, 206, 97 A. 513, 514 (1916), quoting Jewsbury v. Newbold, 40 Eng. Law and Equity, 518: " 'When goods for which a wife has ordinarily authority to contract on the part of her husband, such as articles of dress, are ordered by her and delivered at his residence, where she also resides, *prima facie* the husband is liable, there being a presumption of law in favor of the plaintiff (merchant).' "

Whether the "presumption" is a presumption, whether it is based on sex, and whether its mutual application because of the ERA would result in an infinite series of presumptions back and forth, are questions which are not presented. The Hospital does not advance the presumption analysis of *Noel.* It may be that any such "presumption" is exclusively based on the common law duty of the male spouse to support the female. Or, it may be that the "presumption" is merely a permissible inference of actual authority to bind the income earning spouse which may be drawn wherever the evidence shows a homemaker spouse and an income earning spouse reside in the same household and that the homemaker has purchased on credit necessaries for the family.

**2.** Ford v. S. Kann Sons Co., 76 A.2d 358 (Mun. Ct. D.C. 1950). Wife's desertion defensive to liability based on necessaries doctrine. However, the course of dealing in a retail account maintained in the wife's name was held to create a jury question as to whether the wife had apparent authority to pledge the husband's credit.

doctrine of necessaries on these facts had Maureen been the patient, Maureen is liable as a result of the adoption of the ERA. One flaw in the Hospital's analysis is that it totally ignores to whom credit was extended by the Hospital, that is, whose credit was "pledged."

This Court, as recently as 1969, had occasion to review the various theories underlying the doctrine of necessaries. In *Dudley v. Montgomery Ward & Co.,* 255 Md. 247, 251, 257 A.2d 437, 439-40, which was a merchant's action against the husband where the spouses were separated, we said:

> Generally, a husband has a duty to support his wife and if he fails to do so will be liable to pay one who furnishes the wife necessaries even though the couple are living apart voluntarily or without the fault of the wife. We need not discuss or decide the theories variously relied on to impose this liability on the husband. One view — apparently the Maryland view, *see McFerren v. Goldsmith-Stern Co.,* 137 Md. 573 — is that the wife becomes an agent of the husband *to pledge his credit.* This agency has been called "implied," "of necessity" and "compulsory." 41 Am. Jur. 2d *Husband and Wife* § 349; 2 *Williston, Contracts* (3d ed.) § 270A, p. 151. The Restatement-Restitution suggests that the true basis may be the rules making up the doctrine of unjust enrichment. [Footnote omitted.] [Emphasis added.]

A consistent theme in our cases on necessaries under the common law has been the concept that it is a pledge of the husband's credit. Accordingly, we have recognized both in holdings and in *dicta,* that the husband was not liable to the third party if, under the facts of the particular case, the extension of credit by the third party was solely to the wife.

*Jones v. Joel Gutman & Co.,* 88 Md. 355, 41 A. 792 (1898) involved the new bride, age 31, of a 71 year old widower. Upon finding that the groom's home, which became the marital abode, reflected simple tastes, including using horse

blankets on the beds, the bride applied to the plaintiff for credit. She received the following letter: " 'In response to your application for an account with us, we will be pleased to comply therewith and await your instructions in regard to the same.' " *Id.* at 362-63, 41 A. at 793. When the bills came in and the husband refused to pay, he was sued on theories including liability for necessaries and a presumption of actual authority. Judgment against the husband was reversed and a new trial awarded based on errors in the instructions. One prayer requested by the defendant was that "[i]f the jury find that the plaintiffs gave credit to the wife of the defendant, then their verdict must be for the defendant." It was held that this instruction should have been granted because the "correspondence furnished some evidence, that the credit was given to the wife, and if the jury found that fact the plaintiff was not entitled to recover." *Id.* at 368, 41 A. at 795. *Weisker v. Lowenthal,* 31 Md. 413 (1869) was cited in support of this ruling.

*Weisker* was not a necessaries case. It was a claim by a seller against the husband for goods sold in 1860 to the wife as a *feme covert* trader. Judgment for the husband, based on a jury verdict, was affirmed on appeal. At 416 of 31 Md. this Court said:

> The liability of the husband for goods sold to the wife, upon his credit, *and* by his authority, or assent, either express or implied, cannot be questioned. In such cases, she becomes his agent, and the principles of law incident to that relation, necessarily attach.
>
> If, however, the goods are sold to the wife, upon *her credit solely,* the husband will not be liable, although the sale may have been made with his knowledge, and by his assent. [Emphasis in text.]

*Noel v. O'Neill,* 128 Md. 202, 97 A. 513 (1916), presented a claim by a department store against a widow for the balance on an account reflecting purchases made during her marriage. The account was in the name of the wife but there was evidence that the husband had directed the bills to be

sent to his office from which they were paid. Judgment against the wife was reversed and a new trial awarded. We held that the form of account was by no means conclusive of the question whether credit was given exclusively to the wife. One reversible error was the failure to grant an instruction requested by the wife which would have charged, in substance, that the husband had a duty to supply the necessities of life and that, if the articles purchased were necessities, there was a presumption that the husband had "pledged his own individual credit for the payment thereof" and that the burden was upon the plaintiff to show "that said articles were not delivered upon credit extended by the plaintiff to [the husband], but on the contrary, were delivered solely upon credit extended by the plaintiff to the [wife]." *Id.* at 207-208, 97 A. at 515.

An unambiguous holding that the husband was not liable for necessaries furnished solely on the credit of the wife is found in *Farver v. Pickett,* 162 Md. 10, 158 A. 29 (1932). The husband, administrator *c.t.a.* of his wife's estate, reimbursed himself from the estate for certain payments which he had made, including the funeral bill, a grocery bill and a medical bill. Residuary legatees challenged the allowance of these charges. The wife had imposed the funeral expense obligation on her estate by suitable provision in her will. This Court then addressed the other allowances and held:

> The propriety of charging the other disputed items against the estate of the testatrix depends upon an inquiry as to whether they represent debts for which she was independently liable . . . . In this state a married woman is legally capable of contracting debts on her individual responsibility for which her estate may be chargeable. The husband is not liable for a debt thus contracted upon the wife's sole credit. *Weisker v. Lowenthal,* 31 Md. 413; *Jones v. Gutman,* 88 Md. 355, 41 A. 792, Code art. 45, sec. 5. The creation of an exclusive liability on the part of the wife may be express or implied. [cit. om.] In this case the evidence sufficiently proves that, either expressly or by implication, the

> testatrix alone was given the credits, and assumed the obligations, represented by the claims for medical services and for food supplies to which we have referred . . . . [162 Md. at 12, 158 A. at 30.]

In Kerner v. Eastern Hospital, 210 Md. 375, 123 A.2d 333 (1956), the husband and wife had been separated for 30 years, without divorce. The plaintiff hospital had obtained summary judgment against the husband, on the theory of liability for necessaries, for the balance due on its bill for a long confinement. Summary judgment was reversed because the husband's affidavit contradicted the assertion of an express promise on his part and also, in effect, raised desertion by the wife in defense of the necessaries claim. Additionally, this Court observed that the hospital had "failed to allege that it had extended credit to [the husband]." Id. at 382, 123 A.2d at 337.

The element of the common law doctrine which required the use by the wife of the credit of the husband is also reflected in the following Maryland cases: Ewell v. State, 207 Md. 288, 292, 114 A.2d 66, 69 (1955) ("The husband had an obligation of support, which was to furnish necessaries to the wife. If he did not, her remedy was to purchase the necessaries on his credit."); Gregg v. Gregg, 199 Md. 662, 667, 87 A.2d 581, 583 (1952) ("It is, of course, true that not everything purchased by the wife is a necessary, and it is also true that a wife may purchase even necessaries on her own faith and credit, and cannot require her husband's estate to pay for them."); Anderson v. Carter, 175 Md. 540, 542, 2 A.2d 677, 678 (1938) (Cost of necessary services and supplies to deceased wife properly charged against husband's distributive share in wife's estate where there was "no suggestion in the exceptions, and no evidence in the record, that the bills were incurred upon the wife's sole credit . . . ."). See also Annot., Liability of Husband for Necessaries as Affected by Question Whether or Not They Were Purchased on His Credit, 27 A.L.R. 554 (1923) ("The rule appears to be well settled, both at common law and under modern statutes, that if the credit for necessaries furnished to the wife is given

exclusively to her, the husband is not ordinarily liable therefor . . . .").

When these principles are applied to the case at bar, it is clear to me that the Hospital has failed to present, on summary judgment, a case in which, had Maureen been the spouse admitted for hospitalization, Louis would have been liable for the bill under the necessaries doctrine. The hospital admission form for Louis' admission of November 4, 1976 concludes with the printed statement "I/We hereby certify that the above statements are true and I/we guarantee payment to Prince George's General Hospital of all charges incurred by the above patient from date of admission until discharge." There follows a line for "patient's signature" which Louis did not sign, next to which is a line for the signature of "person responsible" which Louis, and *only* Louis, signed.

The body of the Hospital's admission form is divided into five general sections. The first relates to the patient, the next to "spouse or nearest relative," the third to "credit," the fourth to "social services" and the fifth to "liability." This latter section is not relevant here. It relates only to accidents and was not completed in the instant case. The admission sheet was completed basically in typewriting. In the patient section one block calls for "primary insurance." This was completed, and the information set forth was, at some time, circled. The information is illegible in the exhibit filed in the record extract. In the space for the address of the primary insurer there appear in longhand the words "Wife Maureen." Maureen's affidavit in this case states that her husband "had hospitalization insurance coverage under the Mail Handlers' Benefit Plan" and that it covered 100% of the costs of indicated services but that the insurer refused to pay the claim for services rendered subsequent to the death of Louis. The block in the patient's section of the admission sheet for "responsible party" reads: "Condore, Louis." The patient's employer, and type and length of employment, are recorded. Maureen is listed as the wife with the same home address as Louis. Her place, type and length of employment are also recorded.

The "credit" section of the admission sheet is designed to elicit information concerning the "bank," "landlord or mortgage holder," "automobile-make & year" and "credit reference." This section, as well as the "social service" section, was not completed at all.

One conclusion from the facts evidenced by this admission sheet is that the Hospital, in extending credit in connection with Louis' admission, was looking to the hospitalization insurance and thereafter solely to the credit of Louis. Under the Maryland authorities reviewed above, expanded to make the doctrine of necessaries sex neutral, the Hospital would not be entitled to summary judgment.

In this case, Maureen also moved for summary judgment as defendant. If the necessaries doctrine were expanded, this is not, in my opinion, a case where summary judgment could be entered for the defendant. While Louis signed the account, and the billing by the Hospital was addressed to Louis, these factors are not conclusive. *See Noel v. O'Neill, supra.* Further, there is an inference that the Hospital also looked to the credit of Maureen. The application does elicit that Maureen was employed for 4 years as a secretary at the General Accounting Office. The record is silent whether this information was elicited to enable the Hospital to make contact with the nearest relative or spouse during working hours, or whether it was obtained for credit purposes. Were this case to be tried under a sex neutral necessaries rule, evidence would have to be taken and evaluated in light of the credit practices of the Hospital which, at the time of admission, is not dealing with a request for a specific amount of credit.

At common law, whether purchases by a wife were exclusively on her credit, in which event her husband was not liable under the necessaries doctrine, or whether the wife pledged the husband's credit, in which event the necessaries theory applied, the creditor selling the goods or services presumably made a judgment that the person to whom he looked for repayment was an acceptable credit risk. Thus, if the common law necessaries rule were expanded to

include women, two factors would operate against the wholesale imposition of liability on unsuspecting wives. First, a husband as a practical matter cannot pledge the wife's credit if she has none. The issue in this case only involves women who have assets or earnings. Second, the husband could purchase necessaries exclusively on his own credit, and the expanded common law rule would not automatically drag in the liability of the wife.

## II

An even handed extension of the Maryland common law rule would mean that a contract for necessaries made by the husband could be either with or without pledging the credit of the wife. Liability of the wife, under such a rule, would turn on the facts of each case. Proof of relevant facts is common to all litigation. If the fact of the matter is that credit was extended on the basis of the credit worthiness of a non-contracting female spouse, it seems to me to be consistent with the ERA to apply the necessaries doctrine to permit recovery against her under those circumstances. Any concern that creditors will improperly assert that their decision to extend credit in the name of one spouse was based in part on the credit worthiness of the non-contracting spouse, when such is not the fact, fails to take into account the effect of recent statutes regulating the obtaining by a creditor of information concerning sex and marital status in considering applications for credit. The Federal Equal Credit Opportunity Act, Title 15 U.S.C. §§ 1691-1691f became effective October 28, 1975. The Maryland Equal Credit Opportunity Act, Md. Code (1975, 1980 Cum. Supp.), §§ 12-701 through 12-708 of the Commercial Law Article was effective July 1, 1975.

Pursuant to the federal act, Regulation B, 12 C.F.R. §§ 202.1-202.13, has been adopted. The regulation prohibits a creditor from requesting the marital status of an applicant for an individual, unsecured, credit account in other than community property states. § 202.5 (d) (1). Under § 202.5 (c)

(1) and (2) a creditor may *not* request any information concerning the spouse of an applicant *unless*:

    (i)    The spouse will be permitted to use the account; or

    (ii)   The spouse will be contractually liable upon the account; or

    (iii) The applicant is relying on the spouse's income as a basis for repayment of the credit requested; or

    (iv)  The applicant resides in a community property State . . .; or

    (v)   The applicant is relying on alimony, child support, or separate maintenance payments
. . . .

The Maryland Act includes as a creditor "any person who regularly: (1) [e]xtends, renews or continues credit for personal, family or household purposes . . . ." § 12-701 (e) of the Commercial Law Article. Prohibited discriminatory practices under the Maryland Act include any:

(5) Request for or consideration of the credit rating of an applicant's spouse where the applicant is otherwise credit worthy and is not applying for a joint account unless the applicant lists credit references in the name of spouse or former spouse or has no individual prior credit history or the creditor permits the applicant to designate the applicant's spouse as an authorized purchaser on the account. [§ 12-705.]

The creditor who has not genuinely looked to the credit of a non-contracting spouse will find it difficult at best to demonstrate, after the fact, that he did so where the credit extension has been made after the effective date of these statutory and regulatory prohibitions. On the other hand, creditors who have properly elicited credit information as to a non-contracting spouse after the advent of equal credit

opportunity legislation would ordinarily have credit applications reflecting that fact.[3]

The sex discrimination in the common law necessaries rule is that it applies only where the non-contracting party whose credit is pledged is the male spouse. The doctrine can be brought into compliance with the ERA by expanding it to a sex neutral one. Because equal credit opportunity statutes today restrict creditor excursions into the credit worthiness of a non-contracting spouse unless, in essence, the information is required for a non-discriminatory credit granting decision, I believe such an expanded rule can operate fairly and practically. In my view the decision to expand or extinguish the common law rule should be approached with the recognition that there is a reasonable alternative to abolishing actions for the value of necessaries.

### III

The doctrine of necessaries is simply a remedy. It is one of a number of remedies for enforcement of the husband's common law duty to support the wife. H. Clark, *The Law of Domestic Relations in the United States* 189-92 (1968). If, on the day following adoption of the ERA, this Court were called upon to decide whether the common law duty of the husband to support his wife would be struck down as unconstitutional, or whether the duty of support would in some way be made reciprocal, I have no doubt that the result of that hypothetical case would have been to extend the duty on a sexually neutral basis.

Today in Maryland the spousal support obligation is mutual. *Coleman v. State,* 37 Md. App. 322, 377 A.2d 553 (1977) presented an ERA challenge to the *criminal* non-support statute then codified as Md. Code (1957, 1976 Repl. Vol.), Art. 27, § 88 (a) under which it was a misdemeanor for any person, without just cause, to "desert or

---

**3.** Credit application forms prepared by the Federal Reserve Board to illustrate compliance with Regulation B may be found in 5 Cons. Cred. Guide (CCH) ¶ 40, 945 at 68, 303-312.

willfully neglect to provide for the support and maintenance of his wife . . . ." The Court of Special Appeals there held:

> Measured against the clear command of the Equal Rights Amendment, there is no question that § 88 (a) cannot pass muster. To establish that it is a crime for the husband to desert his wife but no crime for a wife to desert her husband and to establish that it is a crime for a husband to fail to support his wife but no crime for his wife to fail to support her husband is to establish a distinction solely on the basis of sex. [37 Md. App. at 327-28, 377 A.2d at 556.]

Because that case was concerned only with disparate criminality of the same conduct, it was unnecessary for the intermediate appellate court to discuss whether the effect of the ERA had been to impose on the wife a duty of support, for the violation of which there was no criminal sanction. The legislative response to *Coleman* was Chapter 921 of the Acts of 1978, effective July 1, 1978. The title of that bill states it is for "the purpose of extending the criminal prohibition against willful nonsupport to all spouses." Today, Md. Code (1957, 1976 Repl. Vol., 1980 Cum. Supp.), Art. 27, § 88 (a) applies to a person who willfully neglects to provide for the support and maintenance "of his or her spouse . . . ." Because the willful failure of a wife to support her husband is subject to criminal sanction, there is necessarily an underlying duty of support running from a wife to her husband. Consequently, a decision in the instant case to expand the doctrine to embrace necessaries furnished the male spouse will not be imposing a duty of support on the female spouse. The duty is already there, at least by statute.

That the duty of support is no longer limited to the husband is also demonstrated by the support remedy of alimony. Today, "[i]n granting a limited or absolute divorce, annulment, or alimony, the court may award alimony to either party . . . ." Md. Code (1957, 1981 Repl. Vol.), Art. 16, § 1 (a). The civil remedy provided under Art. 16, § 5B for spousal, and child, non-support, by way of a lien on the

earnings of a delinquent provider, is sexually neutral, as is the Uniform Reciprocal Enforcement of Support Act, Md. Code (1957, 1979 Repl. Vol.), Art. 89C and particularly § 2 (h) and (i).

Similarly, today, by Art. 16, § 3, a "court may from time to time, before or after the granting of a divorce . . . order one party to pay to the other a reasonable amount for the reasonable and necessary expenses, including suit money, attorney's fees and costs, of instituting or defending any proceeding, or any proceeding to enforce an award" under the alimony title of Art. 16.

With respect to child support, in *Rand v. Rand,* 280 Md. 508, 374 A.2d 900 (1977), this Court addressed, under the ERA, its decisions which had continued to apply the common law rule that a father is primarily liable for the support of his minor children notwithstanding the provisions of Md. Code (1957, 1970 Repl. Vol., 1976 Supp.), Art. 72A, § 1 which since 1929 had equally charged the father and mother with the care of their minor child and which since 1951 had extended the responsibility "for support of a minor child to both parents." "Applying the mandate of the E.R.A." we held "that the parental obligation for child support . . . is one shared by both parents." 280 Md. at 516, 374 A.2d at 905.

In the state of Florida family support obligations have been equalized in the last decade by legislative action in much the same way as they have been equalized in Maryland. In Florida an equal rights amendment to the state constitution was proposed, but rejected. Nevertheless, based solely on the legislative expansion of support obligations to both sexes, the Florida Court of Appeals has held that a wife is liable for the necessaries of her husband. *Manatee Convalescent Center, Inc. v. McDonald,* 392 So. 2d 1356 (Fla. App. 1980).[4] Were this Court to conclude, as did the Florida court, that the non-support remedy provided by the doctrine of necessaries is to be enlarged, this Court would not be taking upon itself the resolution of a broad policy issue. A course in the direction of expansion of the remedies

---

4. As reported in 7 Family L. Rep. 2181 of January 27, 1981.

underlying duties of support in the family has already been clearly charted and traveled by the General Assembly.[5]

## IV

A substantial deficiency which I find in the Court's resolution of the expansion versus extinction issue is that no consideration is given to the effect of the extinction choice. However, other courts which have had to decide much the same question as that presented here, have concluded to retain the necessaries doctrine because they have recognized its continued value.

As the majority notes, the Supreme Court of New Jersey in *Jersey Shore Medical Center-Fitkin Hospital v. Baum,* 84 N.J. 137, 417 A.2d 1003 (1980), when faced with an equal protection challenge to the New Jersey common law of necessaries, determined to retain the doctrine, albeit in a modified form. That court rejected the extinction alternative for reasons which are sound, and to me, compelling.

There are various alternatives available in establishing a gender-neutral rule for the payment of necessary expenses incurred by either spouse. One alternative is to read literally the Married Woman's Act, *N.J.S.A.* 37:2-10 and 15. That act forms a gender-neutral scheme under which each spouse is independent of the other. However, literal application of the act would leave creditors of a dependent spouse without recourse to the only realistic source of payment, the financially independent spouse. The act tends to ignore that in a modern marriage husbands and wives, whether they contribute income or domestic services, are a financial unit. A necessary expense incurred by one spouse benefits both. In a viable marriage, husbands and wives ordinarily do not distinguish their financial obligations on the basis of which one incurred the debt.

---

5. It is not totally irrelevant to note that a male may be a "displaced homemaker" under Md. Code (1957, 1979 Repl. Vol.), Art. 88A, § 91 and that a husband may be a "battered spouse" under § 102 of the same article.

Consequently, literal application of the Married Woman's Act would not comport with the expectations of husbands, wives, or their creditors. [*Id.* at 149, 417 A.2d at 1009.]

The Supreme Court of Wisconsin was urged, in a case decided November 25, 1980, to abolish that state's common law necessaries doctrine on the ground that it had lost "continued vitality" and that it "conflicts with contemporary trends toward equality of the sexes and a sex neutral society." *Sharpe Furniture, Inc. v. Buckstaff,* 99 Wis. 2d 114, 299 N.W.2d 219, 222 (1980). The wife, a homemaker, had signed in her own name a special order for a $621.50 sofa. Her husband earned a substantial income. A judgment against the husband entered by the trial court and affirmed by the intermediate appellate court was affirmed by the Wisconsin Supreme Court for reasons which are equally applicable here.

We are of the opinion that the doctrine of necessaries serves a legitimate and proper purpose in our system of common law. The heart of this common law rule is a concern for the support and the sustenance of the family and the individual members thereof. The sustenance of the family unit is accorded a high order of importance in the scheme of Wisconsin law. It has been codified as a part of our statutes, *see e.g.,* sec. 767.08, Stats., and it has been recognized as a part of our case law. *See Zachman v. Zachman,* 9 Wis. 2d 335, 338, 101 N.W.2d 55 (1960). *The necessaries rule encourages the extension of credit to those who in an individual capacity may not have the ability to make these basic purchases. In this manner it facilitates the support of the family unit and its function is in harmony with the purposes behind the support laws of this state. The rule retains a viable role in modern society.* [*Id.* at 222 (Emphasis supplied).]

The United States District Court for the Eastern District of Pennsylvania has held that the Pennsylvania ERA

imposes a sex neutral burden of support, including necessaries, so that a wife was liable to the government for the cost of legal representation provided to her husband by the Federal Defender. *United States v. O'Neill,* 478 F. Supp. 852 (E.D. Pa. 1979). It said:

> We reach our conclusion in favor of the government, however, by applying the common law of Pennsylvania. In Pennsylvania, a husband has a legal duty to support his wife and children. "When he neglects this duty, one who supplies necessaries for their support is entitled to recover their cost in an action under the common law, which raises an implied promise by the husband to repay." *Jenkins v. Jenkins,* 246 Pa.Super. 455, 371 A.2d 925 (1977). In *Kurpiewski v. Kurpiewski,* 254 Pa.Super. 489, 386 A.2d 55 (1978), the court held that the Equal Rights Amendment to the Pennsylvania Constitution imposes a sex-neutral burden of support. Therefore a wife can be liable for the costs of necessaries provided to her husband so long as it is shown she is capable of bearing the financial burden. [*Id.* at 854.]

In *Lipshy v. Lipshy,* 525 S.W.2d 222, 227 (Tex. Civ. App. 1975) the husband contended that an award of $45,000 as attorney's fees to his wife in a divorce action was based on sex and violated the Texas ERA. The court held that the amendment "does not simply preclude recovery by a woman" and that factors such as disparate earning capacities, business opportunities and ability "may justify the recovery of an attorney's fee by the husband rather than by the wife." *Accord, Perkins v. Freeman,* 501 S.W.2d 424 (Tex. Civ. App. 1973), *rev'd on other grounds,* 518 S.W.2d 532 (Tex. 1974).[6]

---

6. Another consequence of today's holding is to impair the ability of a financially dependent spouse to obtain needed legal services. This Court has previously held that where the husband died during the pendency of an action for divorce, the wife's attorney could recover his reasonable fees for representing the wife in the divorce proceedings by an action in assumpsit against the husband's estate, founded on the theory of necessaries. McCurley v. Stockbridge, 62 Md. 422 (1884). We have also held that an attorney who represented the wife in negotiations looking toward a prop-

## V

One industry in which the necessaries doctrine has traditionally been, and is currently, of particular significance is retailing. Consequently, the continued vitality of the law of necessaries finds recognition in current statutes which affect, *inter alia,* retail credit. Most meaningful to the present case is the recognition of the necessaries doctrine by the Maryland General Assembly, *after* adoption of the ERA, in this state's equal credit opportunity act.

Historically, where the wife was the homemaker and purchaser of clothing and household items, and the husband was the income producer, retail charge accounts were maintained in the name of the wife. In that form of doing business, the ultimate legal remedy for collection from the credit worthy, but non-contracting spouse, is the necessaries doctrine. An annotation, *Husband's Liability to Third Person for Necessaries Furnished to Wife Separated from Him,* 60 A.L.R.2d 7, 25 (1958), describes the common practice as follows:

> For some reason the merchants commonly carry family charge accounts in the name of the wife and mail bills which are addressed to her, even though they know that the husband is the only one who has the money with which to make payment and that the payment must be made by him or with money supplied by him. In view of this practice, the fact that the account is thus carried and the bills are thus rendered, while some evidence on the issue, does not necessarily establish that the merchant does not rely on the credit of the husband.

The "reason" was that " '[m]ost consumer credit customers are women, but a married woman's account is usually based on the credit of her husband.' " Hoffman, *Sex in the Money*

---

erty settlement and separation agreement which did not come to fruition was entitled to recover a reasonable fee for those services in an action based on the necessaries doctrine against the husband. Weiss v. Melnicove, 218 Md. 571, 147 A.2d 763 (1959). That remedy no longer exists.

*Market,* 2 Md. L.F. 135 (1972), quoting Prentice-Hall Consumer and Commercial Credit Service (1971).

A. Bingaman, writing in 1975 in 3 *Pepperdine Law Review* 26 on "The Impact of the Equal Rights Amendment on Married Women's Financial Individual Rights" furnishes the following description of credit extension practices in states having separate property, as opposed to community property, laws:

> If the wife in a separate property jurisdiction is not employed — and over 55 percent of wives are not — she may obtain credit only in one or two ways. In all credit transactions *except those with retail merchants,* her husband must sign an agreement stating that he will pay any debts she incurs. The credit so obtained will then be not hers, but her husband's.
>
> The second means of obtaining credit for such wives is used *only by retail merchants* who, under certain circumstances, will open accounts for the wife alone for the purchase of "necessaries." Under the common law, and today, the doctrine of "necessaries" supplements the husband's duty of support by allowing merchants to extend credit to a wife for goods purchased without the consent of a husband and to hold the husband liable for the purchase price. However, because the doctrine is hemmed with legal uncertainties, any individual creditor may justifiably refuse to extend credit under the doctrine, and thereby leave the unemployed wife in a separate property jurisdiction with only one means of obtaining credit — the express agreement of her husband to pay any debts created. For such wives, who are the majority of married women in the United States, the Equal Credit Opportunity Act is hardly a giant step forward. In fact, for them it represents only a small advance in the crucial matter of obtaining equal credit. [*Id.* at 31 (Footnotes omitted) (Emphasis supplied).]

The Federal Equal Credit Opportunity Act accommodates, and thereby acknowledges the present utilization of, state necessaries laws. Title 15 U.S.C. § 1691 (b) (1) provides that it is not discrimination for a creditor "to make an inquiry of marital status if such inquiry is for the purpose of ascertaining the creditor's rights and remedies applicable to the particular extension of credit and not to discriminate in a determination of credit-worthiness." It is clear under federal law that a creditor can take a state necessaries law into account, either as a potential liability or as a potential asset, in considering an application for credit, particularly where the application is governed by Regulation B, § 202.5 (c). *See* Maltz and Miller, *The Equal Credit Opportunity Act and Regulation B,* 31 Okla. L. Rev. 1, 16-17 (1978).[7]

More significantly, the Maryland Equal Credit Opportunity Act was enacted *after* the adoption of the Maryland ERA. Section 12-705 of the Commercial Law Article, in paragraph 5, prohibits any "[r]equest for or consideration of the credit rating of an applicant's spouse where the applicant is otherwise credit worthy and is not applying for a joint account" unless one of the following three alternatives is met:

1. "[T]he applicant lists credit references in the name of the spouse . . ."; or
2. The applicant "has no individual prior credit history"; or
3. "[T]he creditor permits the applicant to designate the applicant's spouse as an authorized purchaser on the account."

This paragraph deals exclusively with applications for other than joint accounts. That means that the non-applicant spouse, whose credit may be considered under the three statutory exceptions to the general prohibition, is a spouse who will not be contractually liable for every purchase

---

7. The authors note that the creditor can obtain the information to determine the applicability of a necessaries law only indirectly in cases governed by Regulation B, § 202.5 (c), dealing with the individual, unsecured account application.

on the account. Thus the first and second exceptions are unmistakably a legislative recognition of the necessaries doctrine. The only purpose for expressly permitting a creditor to obtain information on the credit worthiness of the spouse of an applicant, where the applicant seeks an individual account and the applicant's spouse is not to be an authorized purchaser, is because the creditor may ultimately realize on the assets of the applicant's spouse. Inasmuch as the absence of joint liability of the applicant's spouse is a given, the remedy by which those assets can be reached must be the necessaries doctrine.[8]

Section 12-705 of the Commercial Law Article manifests that the General Assembly considers the necessaries doctrine to have survived adoption of the ERA. Because the doctrine can only survive the ERA by expansion to a sex neutral form, the legislative policy determination which the majority seeks has already been made.

## VI

There are at least two interests involved in this case. One is the interest against a possible retrospective imposition of liability on credit worthy wives whose credit may have been effectively pledged in past transactions if an expanded necessaries rule were in effect. The other is the interest against extinguishing a remedy for support which other courts have concluded should be retained. In my view both of these interests can be harmonized by retention of the necessaries doctrine on an expanded basis, but with the expanded remedy operating prospectively.

Decision of this case need not be predicated on the direct operation of the ERA. But the policy of that constitutional amendment, and the Maryland statutes enacted in the past

---

8. The third exception, dealing with use of the account by the spouse, may be viewed as proceeding from a different premise. One rationale for the third exception may be that a non-applicant spouse who makes purchases on the account will be liable directly to the creditor on a *quantum meruit* basis for the particular purchases made by that individual. Another possible explanation for the third exception is that each such purchase is a separate transaction directly enforceable as an express contract against the user of the account, so that that individual's credit may be considered.

decade, which have made family support obligations mutual and credit opportunities for women equal with men, reflect clearly to me that the common law of necessaries is no longer limited only to a pledge of the husband's credit.

In this respect, a recognition of the expansion of this common law remedy would be similar to this Court's determination 14 years ago that the common law rule under which a woman had no legal remedy for loss of consortium was no longer so limited, and that an action, jointly with her husband, could be maintained. *Deems v. Western Maryland Ry.,* 247 Md. 95, 231 A.2d 514 (1967).

I would apply a holding that the necessaries rule is expanded only to transactions entered into after the date of the mandate, *see Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971), but I would give the Hospital the benefit of the new rule. *See Schiller v. Lefkowitz,* 242 Md. 461, 466 & n.1, 219 A.2d 378, 380-81 & n.1, *cert. denied,* 385 U.S. 947, 87 S. Ct. 319, 17 L. Ed. 2d 226 (1966).

Under an expanded necessaries rule, summary judgment for the Hospital was improper. (See Part I). I would reverse and remand.

Judge Davidson has authorized me to state that she concurs in the views expressed in Parts I-IV and VI of this dissenting opinion.